**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4857**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARCUS TROY MOODY,

Defendant - Appellant.

**No. 19-4869**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LATOYA PATRICE CARTER,

Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Newport News.  Robert G. Doumar, Senior District Judge.  (4:19-cr-00051-RGD-LRL-1, 4:19-cr-00051-RGD-LRL-2)

Argued:  March 12, 2021                                        Decided:  June 22, 2021

Before GREGORY, Chief Judge, and FLOYD and THACKER, Circuit Judges.

---

Affirmed by published opinion.  Judge Floyd wrote the opinion in which Chief Judge Gregory and Judge Thacker joined.

---

**ARGUED:**  Trevor Jared Robinson, TREVOR JARED ROBINSON, ATTORNEY AT LAW, Norfolk, Virginia; Mark Bodner, Fairfax, Virginia, for Appellants. Kristen Shannon Taylor, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Peter G. Osyf, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

---

FLOYD, Circuit Judge:

Marcus Moody and Latoya Carter appeal their convictions of several drug and firearm counts arising out of an early morning traffic stop in Newport News, Virginia. Both Moody and Carter challenge the sufficiency of the evidence used to convict them, and Moody separately challenges two jury instructions given by the district court. This appeal highlights the unfortunate ease with which our law permits conspiracy convictions for conduct that overlaps almost entirely with underlying substantive offenses. Constrained as we are by the government's charging decisions and our past conspiracy precedent, we affirm on all counts.

I.

A.

At approximately 3:45 AM on December 30, 2018, Officer Christian Paulino spotted a Volkswagen sedan driven by Carter fail to stop before the white line at the intersection of Sixteenth Street and Ivy Avenue in Newport News, Virginia. Paulino did not pull the car over but started his body camera and followed the car for several more blocks. After Paulino started following the car, Carter tailgated the car in front of her and swerved several times into the parking lane. Paulino turned on his emergency lights and then saw Moody—who was sitting was in the Volkswagen's passenger's seat—reach behind the driver's seat twice as Carter pulled the car over.

At trial, Paulino claims to have smelled marijuana when he approached the car, although none was ever found. Paulino asked Moody why he reached behind the driver's

3

side seat prior to being pulled over, and Moody answered several times "[b]ecause that's my girl." J.A. 40. Carter also told Paulino that a third passenger had been in the car earlier that night, but they had dropped that person off before the stop.

After a second officer arrived at the scene, Paulino searched Moody, Carter, and the Volkswagen. He started by ordering Moody out of the car and searching him, finding one cell phone and roughly $3,900 hidden in bundles of different sizes across nine pockets of Moody's clothing. Moody told Paulino he won the money at a dice game. Paulino then ordered Carter out of the car and searched her, finding only a cell phone.

Next, Paulino searched the Volkswagen. He started in the front of the car, finding a loaded, .9-millimeter magazine in the center console, next to the gearshift and below the air conditioner controls. He then moved to the back, spotting a blue Nike bag on the floorboard behind the driver's seat. Paulino moved the bag and searched underneath the driver's-side seat, revealing a Glock 43 pistol. The Glock 43 was loaded with .9-millimeter ammunition, including one bullet in the chamber. Paulino testified at trial that the Glock 43 would not have been accessible to the driver because it was hidden under the rear portion of the driver's seat. Paulino then searched the Nike bag, which contained four empty plastic baggies, three purple gloves, an electronics charger, a scale with white residue on it, and one clear plastic bag containing 21.33 grams of loose powder cocaine and 54.04 grams of compressed powder cocaine. Lastly, Paulino searched under the front passenger's seat, finding a Glock 22 pistol. The Glock 22 was loaded with an extended magazine containing .40-caliber ammunition, including one in the chamber. Neither Moody nor

4

Carter made any statements during the search admitting to possession or knowledge of pistols or cocaine.

B.

On May 15, 2019, Moody and Carter were indicted for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Two); and two counts of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A), (c)(2) (Counts Three and Four). Moody was separately charged with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Counts Five and Six).

Prior to trial, the parties agreed to several stipulations concerning the two Glock pistols. First, Moody and Carter stipulated that both pistols "were in operable condition on December 30, 2018," and both had "traveled in interstate . . . commerce." J.A. 164. Moody also stipulated that on the day of the traffic stop, he "was a convicted felon and knew on or before [that date that] he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year." J.A. 166.

The parties tried this case to a jury over two days in August 2019. First, the government called Paulino to testify about the traffic stop. Second, the government called Michael Kaelin—the store manager of Superior Pawn & Gun in Hampton, Virginia. Kaelin testified that Carter originally purchased the Glock 43 found under her driver's seat on October 29, 2018. Carter then pawned the pistol back to the store on November 5, 2018

5

and repurchased it on December 29, 2018—the day before the traffic stop. Third, the government called Sergeant Randy Ronnenberg—a twenty-nine-year veteran of the Newport News Police Department—as an expert witness on the various uses of narcotics.

Ronnenberg explained for the jury the difference between evidence of cocaine possession for individual use and evidence of cocaine possession with intent to distribute. First, cocaine users typically possess three-and-one-half grams or less of cocaine, whereas mid-level dealers generally carry ounces. According to Ronnenberg, the quantity of cocaine found in the Nike bag was more consistent with distribution than personal use and valued $8,000 to $10,000. Second, compressed cocaine—which Paulino found in the Nike bag—is indicative of distribution. Third, sellers are often found with both drugs and items like cell phones, scales, packaging materials, and gloves. Fourth, individuals engaged in narcotics distribution divide cash across various pockets in case they are robbed. Fifth, the intersection of Sixteenth Street and Ivy Avenue—where Paulino first observed Moody and Carter—was an area known for a high volume of drug sales.

After the government rested its case, Moody and Carter moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. Although the district court expressed some skepticism as to whether Moody possessed the Glock 22 found under his seat, the district court ultimately denied the motions and sent the case to the jury. Neither Moody nor Carter presented a defense case. The jury ultimately convicted both Moody and Carter on all counts, and they timely appealed following sentencing.

II.

On appeal, Moody and Carter challenge the district court's denial of their Rule 29 motions and contend that the government's evidence was insufficient to convict them as a matter of law. Rule 29 directs district courts to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "We review de novo a district court's denial of a Rule 29 motion . . . ." *United States v. Lam*, 677 F.3d 190, 198 (4th Cir. 2012). We must affirm a conviction when substantial evidence viewed "in the light most favorable to the prosecution" supports the verdict. *United States v. Kellam*, 568 F.3d 125, 140 (4th Cir. 2009). In doing so, we make "all reasonable inferences" in favor of the government and do not weigh evidence or credibility. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Evidence can be either direct or circumstantial, *id.*, and evidence is substantial when a reasonable jury could find it "adequate and sufficient" to establish guilt beyond a reasonable doubt, *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). We begin our analysis with Moody's and Carter's substantive counts of convictions before turning to the conspiracy count.

A.

To prove possession of cocaine with intent to distribute, the government must establish that Moody and Carter (1) possessed the cocaine (2) knowingly and (3) with intent to distribute. *Burgos*, 94 F.3d at 873; 21 U.S.C. § 841(a)(1). "[P]ossession may be actual or constructive, and it may be sole or joint." *United States v. Nelson*, 6 F.3d 1049, 1053 (4th Cir. 1993), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137

7

(1995). Constructive possession requires "ownership, dominion, or control over the contraband or the premises or vehicle in which the contraband was concealed" and "knowledge of the presence of the contraband." *United States v. Herder*, 594 F.3d 352, 358 (4th Cir. 2010). Because constructive possession requires knowledge of contraband, the same evidence that establishes constructive possession of cocaine will establish the first and second elements of § 841(a)(1). It is not sufficient for a defendant to simply be present where drugs are found or associate with another individual who possesses drugs. *United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992). But circumstantial evidence may be sufficient, "consider[ing] the totality of the circumstances surrounding the defendant's arrest and his alleged possession," to establish constructive possession. *Herder*, 594 F.3d at 358.

The government must also prove beyond a reasonable doubt that Moody and Carter had a specific intent to distribute the cocaine. *See United States v. Fisher*, 912 F.2d 728, 730 (4th Cir. 1990). When considering this element, a jury can look to circumstantial evidence such as the quantity of drugs, the presence of drug-packaging supplies, large amounts of cash, and the presence of firearms. *Id.* at 730–31.

Moody and Carter each separately argue that the government failed to establish their respective possession of the contraband. However, we conclude that the government has established constructive possession for both defendants.

1.

On appeal, Moody contends there was no evidence that he either knew the cocaine was present in the Volkswagen or that he constructively possessed the cocaine. Moody's arguments emphasize types of evidence missing from the government's case. Moody never admitted to knowing about the cocaine, and the government never found any direct evidence linking him to the cocaine such as a list of drug customers, forensic evidence, drug residue on Moody's body, or cell phone data revealing drug sales. Moody therefore attempts to analogize this case to *United States v. Blue*, 957 F.2d 106, 107–08 (4th Cir. 1992). In *Blue*, we held that a passenger's proximity to contraband combined with a single furtive movement in the direction of that contraband is insufficient to prove possession. *Id.* at 108 ("Blue's shoulder dip alone does not transform Blue from a mere passenger in the car to a possessor of whatever is discovered underneath the seat in which he is sitting."). True, we noted in *Blue* that the government failed to provide any physical evidence of possession, any connection with the car in which the gun was found, or evidence of prior gun possession. *Id.* But Moody's reliance on *Blue* to focus on the types of evidence missing from the government's presentation ignores what the government did present here: other evidence on which the jury could have reasonably relied in convicting Moody.

Even after *Blue*, proximity to contraband remains a factor for the jury to consider when assessing the evidence. *United States v. Shrader*, 675 F.3d 300, 308–09 (4th Cir. 2012) ("[W]hile we have held that proximity alone is not conclusive on the question of dominion and control, we have never held it to be irrelevant."). And additional circumstantial evidence, combined with Moody's proximity to the cocaine, could lead a

reasonable jury to conclude Moody possessed the cocaine. First, Moody and Carter were spotted at 3:42 AM driving away from an intersection known by Ronnenberg to be a frequent site of drug sales. *See Herder*, 594 F.3d at 359 (recognizing presence in area known for illicit drug activity at night is relevant evidence). Second, after Paulino turned on his sirens, he saw Moody reach into the area of the car where the cocaine was located. Third, the jury could have found Moody's non-responsive answer to Paulino's question about why he was reaching into that area to be evasive or suspicious. *Id.* (considering the defendant's "suspicious answers" when analyzing constructive possession). Fourth, Moody's statement that Carter was "my girl" could be used by the jury to infer a relationship with Carter, who was driving the Volkswagen. *See* J.A. 40. Fifth, Moody was found with several thousand dollars of cash stored in various pockets in random amounts of mixed denominations. Based on Ronnenberg's testimony, a reasonable jury could conclude that this large amount of money and the way it was hidden was consistent with drug sales. *See Herder*, 594 F.3d at 359 (stating that seized money "consistent with the types of 'folds' used in drug distribution" could be considered).

Taken together, a reasonable jury could have inferred from this evidence that Moody was in the area of Sixteenth and Ivy to sell cocaine, that he earned the money found in his pockets by selling cocaine, that he attempted to conceal the drugs once Paulino turned on his sirens, and that he answered evasively about that attempt when asked. Admittedly, there are potentially innocent explanations for each of these pieces of evidence. And this case lacks direct evidence like fingerprints or residue that could more conclusively tie

10

Moody to the cocaine.[1]  But considering the totality of the circumstantial evidence, the district court did not err in sending this charge to the jury.

2.

Carter separately contends the evidence was insufficient to convict her of possession of cocaine with intent to distribute.  Carter argues that (1) the cocaine was contained in a closed Nike bag behind her seat and therefore not in plain view; (2) there is no evidence she made any furtive movements toward the Nike bag containing the cocaine; (3) no forensic evidence tied her to the cocaine; and (4) she made no incriminating statements.

However, the jury was entitled to consider Carter's status as the driver of the Volkswagen in which the drugs were found.  Notably, if a factfinder determines that a driver had dominion and control over a *vehicle*, that is sufficient to establish constructive possession of contraband hidden in that vehicle.  *See Herder*, 594 F.3d at 358.  This Court has looked to several factors to decide when an individual exercises dominion and control over a vehicle, although no one factor is dispositive and the inquiry is fact-specific.  *See United States v. Lawing*, 703 F.3d 229, 240 (4th Cir. 2012) (driver and owner of vehicle); *United States v. Armstrong*, 187 F.3d 392, 396 (4th Cir. 1999) (owner and sole occupant of vehicle); *United States v. Branch*, 537 F.3d 328, 343 (4th Cir. 2008) (driver of vehicle

---

[1] Moody and Carter do not raise a specific challenge to the sufficiency of the government's evidence concerning the specific intent to distribute the cocaine, focusing instead on the failure to prove possession.  Regardless, the jury could have reasonably concluded from Ronnenberg's testimony combined with the value and quantity of the cocaine, its proximity to paraphernalia associated with drug sales, and the presence of compressed powder cocaine established the specific intent to distribute.

11

with permission of owner); *Herder*, 594 F.3d at 358 (driver and sole occupant but ownership unclear).

In this case, Carter was neither the sole occupant nor the owner of the Volkswagen, which weakens the inference of dominion and control based on her status as the driver of the Volkswagen. But the fact that Carter drove the Volkswagen remains relevant to determining whether she exercised knowing dominion and control over the cocaine. "There is an inference that the driver of the vehicle has knowledge of the contraband within it . . . ." *United States v. Laughman*, 618 F.2d 1067, 1076 (4th Cir. 1980). And additional circumstantial evidence helps to strengthen the connection between Carter, as driver, and the cocaine found behind her seat. *See Burgos*, 94 F.3d at 863 (emphasizing "the complete picture that the evidence presents"). First, there was evidence of at least some relationship between Carter and Moody. Second, Carter owned the loaded Glock 43 hidden strategically under her seat and found right next to the Nike bag holding the cocaine. The evidence also reveals that Carter had repurchased the Glock 43 from a pawnshop the day before the traffic stop. A reasonable jury could conclude from this evidence that Carter repurchased the Glock 43 and strategically concealed it under her seat because she knew she would be in possession of cocaine later that evening and wanted to protect it.

12

B.

Moody and Carter next challenge their convictions for possession of a firearm in furtherance of a drug trafficking offense under § 924(c)(1)(A), (c)(2).[2] To sustain Moody's and Carter's § 924(c) convictions, we must conclude that a jury could find beyond a reasonable doubt that they (1) committed a drug trafficking offense and (2) possessed a firearm (3) in furtherance of that drug offense. *See* 18 U.S.C. § 924(c)(1)(A); *United States v. Lomax*, 293 F.3d 701, 704–05 (4th Cir. 2002). As discussed above, Moody and Carter possessed cocaine with intent to distribute. Therefore, the only remaining questions are whether they possessed the Glock 22 and Glock 43 pistols and whether they did so to further the drug trafficking offense. In *Lomax*, we endorsed the use of a variety of factors to decide whether possession of a firearm furthered a drug offense, including: the type of drug offense, the type of firearm, its proximity to drugs and drug profits, its accessibility, whether the firearm is illegally possessed, whether the firearm is stolen, whether the firearm is loaded, and the general circumstances surrounding the possession. *See* 293 F.3d at 705.

---

[2] Moody challenges the sufficiency of the evidence used to convict him both for his § 922(g)(1) felon-in-possession counts and his § 924(c)(1)(A) counts. Moody's sufficiency argument regarding his § 922(g)(1) convictions turns entirely on the government's failure to establish knowing possession of the pistols. Because Moody stipulated to the remaining elements of § 922(g)(1), we do not discuss that charge separately when assessing the sufficiency of the evidence.

1.

Moody contends that the evidence is insufficient to establish his constructive possession of either the Glock 22 or Glock 43 pistols found in the Volkswagen. He argues that no forensic evidence or statements connect him to either weapon, he was not seen holding either weapon, neither weapon would have been visible to him from the passenger's seat, and he did not own the Volkswagen in which the guns were found. Moody again analogizes to *Blue* to argue that his proximity to the guns along with his movements prior to being pulled over did not elevate him above the status of passenger to that of possessor.

*Blue* does not support Moody's position in the way he claims. Some further discussion of the facts of that case are warranted. In *Blue*, a police officer investigating drug crimes saw Blue and a second individual leave a house and get in a car, which the officer then pulled over. 957 F.2d at 106–07. As the officer left his car, he saw Blue's shoulder "dip as if the passenger were reaching under the seat with his right hand." *Id.* at 107. When officers searched Blue—who was seated in the passenger's seat—they discovered drug paraphernalia and "a small amount of heroin." *Id.* Officers also found a loaded firearm under the passenger's seat. *Id.* We held that this evidence was "just barely" insufficient to support a conviction. *Id.* at 108.

Here, prosecutors presented more evidence than in *Blue* to support Moody's firearm convictions. We may "not examine evidence in a piecemeal fashion, but [must] consider it in cumulative context," looking to "the complete picture, viewed in context and in the light most favorable to the Government." *Burgos*, 94 F.3d at 863. Viewed cumulatively,

14

Paulino stopped Moody and Carter at 3:42 AM after spotting them leaving an intersection known for drug sales. Moody was found in a vehicle in close proximity to two firearms hidden under the passenger's and driver's seats. Both firearms were loaded and concealed under car seats and were found in the same car as a bag of cocaine valuing at least $8,000, which Moody possessed.

As to the Glock 43 hidden under the driver's seat, a reasonable jury could take this evidence and view it alongside Moody's movements into the area of the Volkswagen where that pistol was hidden as well as his non-responsive statements about those movements. The jury was also free to consider Moody's relationship to Carter and Carter's recent repurchase of that firearm as well as evidence that .9-milimeter ammunition was in plain view next to Moody in the Volkswagen's center console. There was sufficient evidence for a reasonable jury to conclude Moody had the knowledge and ability to exercise dominion and control required to constructively possess that pistol.

More challenging is Moody's conviction for possessing the Glock 22 found under the passenger's seat. Unlike the Glock 43 found under the driver's seat, there is no evidence of Moody reaching into the area of the car where the Glock 22 was found, no evidence of who owned the pistol, nor any ammunition for that pistol in plain view and within reach of Moody. However, the Glock 22 was loaded with an extended magazine and concealed in the same manner as the Glock 43 under the driver's seat. Moody was also in close proximity to the Glock 22, which remains a relevant consideration for constructive possession. *See Shrader*, 675 F.3d at 308–09. And the Glock 22 was located near the front of the driver's seat with the magazine facing toward the passenger. Paulino

15

testified at trial that the pistol would have been readily accessible to the passenger. A reasonable jury, considering this evidence alongside the totality of the evidence discussed above, could conclude beyond a reasonable doubt that Moody had both knowledge of and the ability to control the Glock 22 and constructively possessed it in order to protect both the cocaine and money he was carrying.

2.

Carter's possession of the two firearms is more easily established. First, the evidence reveals that Carter owned the Glock 43 pistol found under her seat, having repurchased it from a pawnshop the prior day. Constructive possession can be established via ownership of the contraband in question. *Herder*, 594 F.3d at 358. Because Carter owned the Glock 43 found under her seat, there was clearly sufficient evidence to establish constructive possession.

Second, there was sufficient evidence, taken as a whole, to establish Carter's possession of the Glock 22 pistol found under Moody's seat. Carter's status as the driver of the Volkswagen is relevant to her knowledge and ability to exercise dominion and control over the Glock 22. *See Laughman*, 618 F.2d at 1076 (noting the "inference" that a car's driver knows what contraband it contains).[3] And Carter's status as the driver has to

---

[3] The government argues that Carter's "dominion and control over the vehicle in which two loaded and chambered firearms were located . . . alone is sufficient to support a conviction under [a] constructive possession theory." Resp. Br. at 27. The government cites our opinion in *Herder* in support of this contention but reads the case too broadly. In *Herder*, the defendant was "the driver and sole occupant" of the vehicle and "the drugs

be viewed collectively alongside other evidence: namely, that Carter was driving a vehicle containing distribution quantities of cocaine next to a pistol that she admittedly owned, having repurchased it the previous day. That pistol—the Glock 43—was loaded and concealed under her seat just like the Glock 43 under Moody's seat. Under the totality of these specific circumstances, a reasonable jury could have concluded both that Carter knew the Glock 22 was present and exercised joint possession of it with Moody.[4]

C.

Finally, Moody and Carter challenge their Count One conspiracy convictions under § 846. To prove this conspiracy, the government had to establish (1) that Moody and Carter entered into an agreement to possess cocaine with intent to distribute; (2) that both defendants knew of the conspiracy; and (3) that both defendants knowingly and voluntarily entered into that conspiracy. *United States v. Hackley*, 662 F.3d 671, 678 (4th Cir. 2011).

---

were within his reach," both of which "indicat[ed] a high degree of dominion and control over the drugs." *Id.* at 358–59. Here, however, Carter was not the Volkswagen's sole occupant, nor is it clear she could have reached the Glock 22 hidden under the front passenger's seat. *Herder* does not dispose of this count on appeal.

[4] Moody and Carter also indirectly attack the sufficiency of the evidence as to the requirement that their possession of the pistols further a drug trafficking offense. Moody contends that because he did not possess the cocaine, any possession of the pistols could not have furthered his commission of a trafficking crime. Carter argues that the proximity of her Glock 43 to the Nike bag was "a mere coincidence." Opening Br. at 32. But under *Lomax*, a jury could have considered that the guns were loaded, that they were found near the cocaine and Moody's profits from the cocaine, the street value of the cocaine, the fact that Moody possessed the guns illegally, as well as Ronnenberg's testimony that dealers carry semi-automatic pistols as protection to reasonably conclude Moody and Carter possessed the pistols to protect the cocaine and profits earned from selling it. *See* 293 F.3d at 705 (describing factors used to determine whether firearms furthered a drug offense).

17

Because Carter and Moody were the only defendants in this case, proof of an agreement between them will also constitute proof of knowledge of this limited conspiracy to possess the Nike bag of cocaine.

Conspiracy offenses are distinguished from underlying crimes due to "[t]he presence of a knowing and voluntary agreement." *Id.* at 679. Indeed, the "gravamen of the crime of conspiracy is an agreement to effectuate a criminal act." *Laughman*, 618 F.2d at 1074. The agreement does not need to be explicit, and it can be proven entirely through circumstantial evidence. *United States v. Gomez-Jimenez*, 750 F.3d 370, 378 (4th Cir. 2014). But the government may not simply use a defendant's commission of an underlying substantive offense to prove the existence of a separate agreement to commit that offense with another person. "[I]f the object of the offense is the distribution through a sale of cocaine, . . . a conspiracy to commit the distribution offense must involve an agreement separate from the immediate distribution conduct that is the object of the conspiracy." *United States v. Edmonds*, 679 F.3d 169, 173–74 (4th Cir. 2012), *vacated on other grounds*, 568 U.S. 803 (2012). "[T]he government must take care not to ask the jury to infer an agreement based on guilt of" underlying offenses alone. *Hackley*, 662 F.3d at 681.

When assessing circumstantial evidence of an agreement, this Court has looked to a defendant's "relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy." *United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir. 1984). The government presented very little evidence about the relationship between Moody and Carter beyond traveling in the same car and Moody's statement about Carter: "that's my girl." J.A. 40. Although that evidence

18

certainly bears on Moody's constructive possession of contraband by showing he was not in a stranger's car, it does not describe the nature or duration of their relationship and is therefore less probative of the existence of a criminal agreement between the two. *Cf. United States v. Yearwood*, 518 F.3d 220, 224 (4th Cir. 2008) (evidence of "a longstanding social and business relationship"). Second, the government presented no evidence of any prior conversations or meetings that might suggest the formation of a plan. *Cf. United States v. Carmichael*, 685 F.2d 903, 907, 909 (4th Cir. 1982) (agreement established by multiple supper meetings at the defendant's lake house); *United States v. Caudle*, 758 F.2d 994, 996 (4th Cir. 1985) (prior meetings to discuss criminal plans). Nor was there any trial testimony about the various roles different defendants played in the conspiracy. *Cf. United States v. Chambers*, 985 F.2d 1263, 1270 (4th Cir. 1993) (testimony of co-conspirator as to the contribution of other co-conspirators), *superseded on other grounds by* U.S.S.G. § 3B1.1 cmt. n.2.

Most of the evidence in this case simply amounts to the circumstances surrounding Paulino's traffic stop and subsequent search of the Volkswagen. However, there is ultimately a sufficient quantum of circumstantial evidence of an agreement to justify the conspiracy conviction. As stated above, there is at least some evidence of a relationship between Moody and Carter. And a reasonable jury could infer from Moody's and Carter's joint possession of the Glock 22 and Glock 43 pistols that they planned in advance to bring those weapons to further their cocaine possession. This inference is strengthened by evidence that both weapons were loaded and strategically hidden as well as by evidence that the car contained extra ammunition for the Glock 43. It is further supported by the

fact that Carter had repurchased one of the two pistols the day before the traffic stop, from which the jury could infer an intent to bring that gun as part of a plan to protect the cocaine. This evidence is separate from the mere fact of cocaine possession and avoids the conclusion that the jury could only have inferred an agreement from possession alone. When combined with the facts and circumstances surrounding Moody's and Carter's possession of the cocaine, there was sufficient evidence from which a reasonable jury could find both knowledge of and an agreement to enter the conspiracy. And a jury could find knowing and voluntary participation in this conspiracy based on evidence that Carter drove the car containing the drugs and firearms as well as Moody's possession of drug-related cash.

We reach this conclusion reluctantly. This prosecution highlights the unfortunate breadth of our modern conspiracy law and the government's "growing habit to indict for conspiracy in lieu of prosecuting for the substantive offense itself, or in addition thereto," which "constitutes a serious threat to fairness in our administration of justice." *Krulewitch v. United States*, 336 U.S. 440, 445–46 (1949) (Jackson, J., concurring). Indeed, there is little to distinguish joint possession of the drugs and guns in this case from some independent agreement or scheme on the part of the defendants. And there is no evidence that the conspiracy extended beyond an agreement by Moody and Carter to possess the cocaine and guns found on the night in question. "Of course, it is for prosecutors rather than courts to determine when to use a scatter gun to bring down the defendant . . . ." *Id.* at 452. But we are given pause by how easily substantive law and conspiracy layer onto

20

each other in the context of joint possession, despite the lack of any evidence suggesting a broader conspiracy, either in terms of members or duration.

*   *   *

The government did not present an overwhelming case against Moody and Carter. But, under Rule 29, we do not ask whether a reasonable jury could have acquitted the two, nor whether we—sitting as jury members—would have voted to acquit them. We ask only whether any reasonable jury could have convicted based on the evidence presented. If the evidence in *Blue* "f[ell] outside, but just barely, the realm of the quantum of evidence necessary to support a finding of constructive possession," 957 F.2d at 108, then the additional evidence in this case falls inside that line—but just barely so.

## III.

Moody separately challenges two of the jury instructions given by the district court. First, Moody argues that the court erroneously instructed the jury as to the required mens rea for his § 922(g) felon-in-possession counts. Moody asks us to find the court's instruction insufficient following *Rehaif v. United States*, 139 S. Ct. 2191 (2019), because it did not require the jury to consider whether Moody knew that his prior felony conviction prohibited him from owning a firearm. Second, Moody challenges the district court's instruction on aiding-and-abetting liability, contending that the jury was not required to consider whether Moody had advance knowledge Carter would bring firearms to further their joint possession of the cocaine. Moody did not object to either instruction at trial, so we review both instructions for plain error. *Gregg v. Ham*, 678 F.3d 333, 338 (4th Cir.

21

2012). "[P]lain error review requires 1) error; 2) plain under current law; 3) that affects substantial rights, i.e. is prejudicial to the defendant; and 4) which seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Rogers*, 18 F.3d 265, 268 (4th Cir. 1994).

A.

Moody was charged in Counts Five and Six with being a felon in possession of the Glock 22 and Glock 43 pistols pursuant to § 922(g)(1). The text of that provision criminalizes the possession of a firearm by a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). A penalty provision contained in § 924(a) sets forth a statutory maximum penalty of ten years' imprisonment for any person who "knowingly violates" § 922(g)(1). 18 U.S.C. § 924(a)(2). Shortly before trial in this case, the Supreme Court decided *Rehaif*, which held that § 924(a)'s knowledge requirement applies both to § 922(g)'s possession element and to its status element. 139 S. Ct. at 2200. Thus, the government must prove beyond a reasonable doubt that a defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.*

Before trial, Moody and the government stipulated that he "was a convicted felon *and knew on or before December 30, 2018*, he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year." J.A. 166 (emphasis added). At trial, the district court instructed the jury that the government must prove the following beyond a reasonable doubt: (1) Moody's knowing possession of the Glock 22 and 43

22

pistols; (2) Moody's prior conviction of an offense punishable by longer than one year of incarceration; (3) Moody's knowledge of that prior conviction at the time he possessed the firearms; and (4) that the firearms had entered the stream of interstate commerce.[5] The district court then instructed the jury that Moody "already stipulated that he knew that he was convicted and he knew he was a convicted felon." J.A. 156. Moody did not object to this instruction.

Moody argues for the first time on appeal that the district court did not properly describe the mens rea requirement because he believes *Rehaif* requires the government to prove not just knowledge of status but also knowledge that this status prohibits firearm possession. We have summarily rejected this argument in the past. *United States v. Collins*, 982 F.3d 236, 242 n.2 (4th Cir. 2020) (describing this assertion as "a mistake of law argument, which is not a valid defense").[6]

And with good reason. Nothing in *Rehaif* suggests the reading that Moody invites us to adopt. In that case, the Supreme Court made clear that § 924(a)'s knowledge requirement should apply to both the possession and status elements of § 922(g) offenses. *Rehaif*, 139 S. Ct. at 2200. The Court's holding was based on the typical presumption that

---

[5] The parties stipulated to this last element, which is not challenged on appeal.

[6] Six sister circuits to take up the issue have similarly decided that *Rehaif* does not require the government to prove knowledge that defendants' status prohibits them from owning a firearm. *United States v. Benton*, 988 F.3d 1231, 1238–41 (10th Cir. 2021); *United States v. Robinson*, 982 F.3d 1181, 1187 (8th Cir. 2020); *United States v. Johnson*, 981 F.3d 1171, 1189 (11th Cir. 2020); *United States v. Singh*, 979 F.3d 697, 727–28 (9th Cir. 2020); *United States v. Maez*, 960 F.3d 949, 954–55 (7th Cir. 2020); *United States v. Bowens*, 938 F.3d 790, 797–98 (6th Cir. 2019).

scienter should attach to "each of the statutory elements that criminalize otherwise innocent conduct." *Id.* at 2195 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). Because a defendant's firearm possession may be "entirely innocent" but for falling into one of § 922(g)'s prohibited statuses, the Court merely concluded that there was no reason not to apply a scienter requirement to the offense's status element. *Id.* at 2195–97. This reasoning only extends to the elements of § 922(g), which the Supreme Court defined as: (1) status, (2) possession, (3) a firearm, and (4) a jurisdictional requirement that the gun have entered the stream of interstate commerce. *Id.* at 2195–96. There is no basis in the Court's reasoning to extend the typical scienter requirement beyond these elements to the knowledge that possession of a firearm is prohibited. But there are several good reasons to reject such an extension.

First, such a holding "would improperly elevate the mens rea required for conviction . . . from knowledge to willfulness." *United States v. Benton*, 988 F.3d 1231, 1238 (10th Cir. 2021). A knowledge requirement "does not necessarily have any reference to a culpable state of mind or to knowledge of the law. . . . [U]nless the text of a statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 192–93 (1998). Under § 922(g)(1), status is one of the facts of the offense to which a knowledge requirement could presumably apply. By contrast, "to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" *Id.* at 191–92 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)). Drawing on that distinction, we held prior to *Rehaif* that § 922(g) only

24

required the government to prove knowing possession but not the heightened mens rea of willfulness. *See United States v. Gilbert*, 430 F.3d 215, 218–19 (4th Cir. 2005) ("Congress specifically declined to require the showing of willfulness necessary to punish violations of certain other subsections of § 922"). Nothing in *Rehaif* undermined this conclusion, and we decline to extend the mens rea beyond our past precedent and that of the Supreme Court.

Second, as we have previously suggested, Moody's argument amounts to a mistake-of-law defense. *Collins*, 982 F.3d at 242 n.2. The Supreme Court in *Rehaif* acknowledged that ignorance of or mistake about the legal consequences of one's actions is not a defense to a criminal charge. 139 S. Ct. at 2198. The Court carefully distinguished a mistake of law from a mistake about one's legal status—which is a collateral question of law that can "negat[e] an element of the offense." *Id.* Moody effectively asks us to ignore this distinction. But "[t]he fact that § 922(g)(1) exists and prohibits certain conduct is not collateral . . . . It is the prohibition itself. Because § 924(a)(2) does not require willfulness, ignorance of the statutory prohibition itself is not a defense." *United States v. Maez*, 960 F.3d 949, 955 (7th Cir. 2020).

## B.

Finally, Moody challenges the district court's instruction on aiding-and-abetting liability under 18 U.S.C. § 2, which holds individuals criminally liable for the substantive offenses that they aid and abet. To be convicted under an aiding-and-abetting theory of liability, a defendant must "(1) take[] an affirmative act in furtherance of [an underlying] offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United*

*States*, 572 U.S. 65, 71 (2014). A defendant must intend to aid the charged crime, and it is not enough to intend to further a different or lesser offense. *Id.* at 76. Section 924(c) is a "compound" offense, which requires proving both the use or carry of a firearm *and* an underlying drug trafficking offense. *Id.* at 71. Thus, the Supreme Court has held that to aid and abet a § 924(c) offense, a defendant who assists a drug trafficking offense needs advance knowledge that his or her co-defendant would commit a drug offense with a firearm. *Id.* at 78. Otherwise, that defendant cannot intend to facilitate the entire offense of carrying a firearm in furtherance of a drug trafficking offense. *Id.* Moody argues that the district court's instruction on aiding and abetting was insufficient in this case because it failed to instruct the jury that Moody needed advance knowledge of and intent for Carter to possess firearms in furtherance of the drug offenses.

Because we review the district court's instruction for plain error, we need not decide whether the court's instruction was erroneous. Under plain error review, Moody must also demonstrate that any error affects his substantial rights. *United States v. Stitt*, 250 F.3d 878, 883–84 (4th Cir. 2001). This requires Moody "to establish . . . actual prejudice" or that the instruction actually "resulted in his conviction." *Id.* at 884 (cleaned up). "[A] showing of uncertainty as to 'whether the verdict returned by the jury rested solely on the mis-instruction' does not meet the defendant's burden of establishing actual prejudice." *United States v. Ali*, 991 F.3d 561, 575 (4th Cir. 2021) (quoting *United States v. Hastings*, 134 F.3d 235, 243 (4th Cir. 1998)). Here, there was sufficient evidence for the jury to have convicted Moody of Counts Three and Four as a principal. And the verdict form asks only whether Moody was guilty or innocent, not which theory the jury relied upon. Therefore,

Moody cannot establish that the jury relied on aiding-and-abetting to convict him for any of his charged offenses. We are constrained to affirm the district court's instruction, which cannot be said to have caused Moody actual prejudice.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.