**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-4328**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

AARIC MURRAY,

Defendants – Appellant.

**No. 23-4331**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RICHARD KIRKLAND JOHNSON,

Defendant – Appellant.

Appeals from the United States District Court for the Northern District of West Virginia, at Clarksburg. Thomas S. Kleeh, Chief District Judge. (1:20-cr-00095-TSK-MJA-1; 1:20-cr-00095-TSK-MJA-2)

Argued: September 12, 2025                    Decided: October 22, 2025

Before NIEMEYER, GREGORY, and HARRIS, Circuit Judges.

---

Affirmed by unpublished opinion.   Judge Harris wrote the opinion, in which Judge Niemeyer and Judge Gregory joined.

---

**ARGUED:**  L. Richard Walker, First Assistant Federal Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, WV; David W. Frame, LAW OFFICE OF DAVID W. FRAME, Clarksburg, WV, for Appellants.  Zelda E. Wesley, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, WV, for Appellee.  **ON BRIEF:**  William Ihlenfeld, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, WV, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

A jury convicted Aaric Murray and Richard Johnson of multiple drug offenses and one count of aiding and abetting the possession of firearms in furtherance of a drug offense in violation of 18 U.S.C. § 924(c)(1)(A)(i).  On appeal, Murray and Johnson challenge only their convictions for the firearm offense.  According to the defendants, the evidence was insufficient for the jury to find that they had knowledge of two firearms present in the mobile home where both were then living.  We disagree.  Sufficient evidence supports the jury's verdict, and we therefore affirm Murray and Johnson's convictions.

## I.

## A.

At the time of the events at issue in this case, Aaric Murray and Richard Johnson lived together in a mobile home in Morgantown, West Virginia.  Murray had lived in the home for one to two months and calls himself the "primary occupant."  Johnson describes himself as a "temporary occupant" or "unofficial subtenant" of the home and had lived there for approximately a month.  The two firearms at the center of this appeal were recovered from a room inside this mobile home.[1]

The criminal case against Murray and Johnson began with an early morning 911 call.  The caller claimed – falsely, it turned out – that his wife had been taken hostage at

---

[1] The facts of this case are generally undisputed.  We refer here to facts drawn from the trial record and characterizations offered by the defendants in their appellate briefing.

gunpoint by "Seven," Murray's nickname, and was being held inside the mobile home where Murray and Johnson lived. Three Monongalia County Sheriff's deputies responded to the home to investigate.

The deputies knocked and announced their presence, and Murray answered the door. Due to the nature of the 911 call, the deputies immediately detained him. Johnson complied with the deputies' instructions to exit the home and was also detained. Told of the 911 call, Murray denied that anyone was being held hostage and agreed the deputies could enter the mobile home.

Once inside, one of the deputies directed Murray to sit down at a table in an open room in the front portion of the home. Immediately upon sitting Murray down, the deputy saw a black firearm holster lying on that table. On the same table, he saw several plastic baggies, a digital scale, baking soda, rubber bands, and other items he described as drug paraphernalia and equipment. The table was also covered with a powder-like residue. Based on these observations, the deputy believed the table to be a "drug-packaging station." Elsewhere in the room he saw two bags containing what he believed to be crack cocaine, as well as needles on the table, in the trash, and throughout the room.

Still focused on the 911 call, the deputies conducted a protective sweep of the home and satisfied themselves that there was no hostage situation. At that point, they initiated a drug investigation based on the materials observed in plain view in the front room. As part of this investigation, they secured a search warrant for the mobile home. During the search, two firearms – a Glock pistol and a Rossi revolver – were recovered from the front room. Both firearms were stored in a green cloth bag, which was found on top of a cabinet at the

4

back of the room, behind the table on which the holster and drug evidence had been observed.

**B.**

A federal grand jury in the Northern District of West Virginia indicted Murray and Johnson on several counts, including multiple drug charges. At issue here is Count Six of the indictment, charging one count of aiding and abetting the possession of firearms in furtherance of a drug offense in violation of 18 U.S.C. § 924(c)(1)(A)(i). Specifically, Count Six alleged that Murray and Johnson, "aided and abetted by each other, did knowingly possess firearms described as a Glock pistol . . . and a Rossi revolver . . . in furtherance of a drug trafficking crime for which they may be prosecuted in a Court of the United States." J.A. 35. The listed firearms were the two guns recovered from the green bag in the front room of the mobile home.

The case proceeded to a jury trial. At the close of the government's case-in-chief, Murray and Johnson each moved, pursuant to Federal Rule of Criminal Procedure 29, for a judgment of acquittal on all counts. The district court denied both motions. At the conclusion of the trial, the jury convicted both Murray and Johnson of multiple drug charges and Count Six, the § 924(c)(1)(A)(i) firearm charge.[2] Murray and Johnson renewed their Rule 29 motions for acquittal as to Count Six only and, in the alternative, moved for a new trial on that count. Each argued that the government had presented

---

[2] Murray was acquitted of two other firearm possession charges, and Johnson was acquitted of one drug distribution charge.

insufficient evidence that he knew of the presence of the two firearms in the mobile home. The district court again denied the motions, finding that the evidence was sufficient to support the jury's guilty verdict as to both Murray and Johnson. *United States v. Johnson*, 2023 WL 3166168, at *3 (N.D. W. Va. Apr. 28, 2023); *United States v. Murray*, 2023 WL 3166170, at *3 (N.D. W. Va. Apr. 28, 2023).

Both defendants were sentenced to mandatory 60-month, consecutive terms of imprisonment on the Count Six firearms charge. *See* 18 U.S.C. § 924(c)(1)(A), (c)(1)(D)(ii). The district court sentenced Murray to a total of 170 months in prison, and Johnson to a total of 147 months.

The defendants timely appealed.

## II.

On appeal, Murray and Johnson challenge only the sufficiency of the evidence supporting their convictions on Count Six, arguing that the district court erred in denying their Rule 29 motions for acquittal as to this charge. Specifically, the defendants contend that the government failed to prove, beyond a reasonable doubt, that they had knowledge that the two firearms found in the green bag were present in the mobile home.

We review de novo a district court's denial of a Rule 29 motion for acquittal. *United States v. Moody*, 2 F.4th 180, 189 (4th Cir. 2021). And we emphasize at the outset that the defendants face a "heavy burden" in arguing that the evidence is insufficient to sustain the jury's guilty verdicts. *United States v. Wolf*, 860 F.3d 175, 194 (4th Cir. 2017) (citation and quotation marks omitted). The jury's verdict will be affirmed so long as it is supported

6

by "substantial evidence," *Moody*, 2 F.4th at 189 – evidence that "a reasonable finder of fact" could find "adequate and sufficient" to support a verdict of guilt beyond a reasonable doubt, *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). We consider both direct and circumstantial evidence, *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982), and we view the evidence in the light most favorable to the government and draw all reasonable inferences in the government's favor, *Moody*, 2 F.4th at 189. Ultimately, we can reverse a conviction for insufficient evidence "only when the prosecution's failure is clear." *United States v. Lawing*, 703 F.3d 229, 240 (4th Cir. 2012) (citation and quotation marks omitted).

There is no dispute that the government had to prove Murray and Johnson knew of the firearms at issue to convict them of aiding and abetting the possession of firearms in furtherance of a drug offense under § 924(c)(1). *See Rosemond v. United States*, 572 U.S. 65, 77–78 (2014) (convicting a defendant of aiding and abetting the commission of a firearm offense under 18 U.S.C. § 924(c)(1) requires showing the defendant had "advance knowledge" of the firearm); *United States v. Herder*, 594 F.3d 352, 358 (4th Cir. 2010) (establishing constructive possession of contraband requires "proof the defendant had knowledge of the presence of the contraband"). Murray and Johnson claim they had no knowledge of the firearms in the mobile home – which were hidden from plain view by the green bag – and that the government failed to introduce sufficient evidence to prove they

7

knew of the guns' presence.[3]  We disagree.  Like the district court, we conclude the evidence presented was sufficient for the jury to find that both Murray and Johnson had knowledge of the firearms and to convict them on Count Six.

## A.

Murray and Johnson emphasize on appeal, as they did before the district court, the lack of direct evidence that they knew about the guns in the mobile home.  Neither Murray nor Johnson admitted to knowing about the firearms, and no evidence was introduced that either spoke about the guns.  No witness testified that Murray or Johnson purchased the firearms, brought them into the mobile home, or carried or handled the firearms.  No fingerprint or DNA evidence connected either defendant to the firearms, and the government presented no evidence about any owners, past or present, of the firearms.  The government also failed to preserve as evidence, and thus did not introduce at trial, either

---

[3] As the district court instructed the jury, Count Six required the government to prove knowledge of the firearms in two contexts.  First, the government had to prove that at least one of the defendants knowingly possessed the firearms in question.  The government proceeded on a theory of constructive possession, which required proof that either Murray or Johnson (or both) knew about the guns in the mobile home and had dominion or control over them.  *See Herder*, 594 F.3d at 358; *Moody*, 2 F.4th at 189. Second, to convict Murray or Johnson of "aiding and abetting" that possession "in furtherance of" a drug trafficking crime, *see* § 924(c)(1), the government had to establish (again) knowledge of the guns' presence and also knowledge of the guns' connection to, and possession in furtherance of, a drug trafficking crime.  *See Rosemond*, 572 U.S. at 78. On appeal, Murray and Johnson argue only that they lacked knowledge that the two firearms were present in the mobile home, and that the government failed to prove otherwise.

the green bag in which the firearms were found or the firearm holster observed on the table in the front room.

We recognize that a jury could have viewed this lack of direct evidence as creating a reasonable doubt about Murray and Johnson's guilt on Count Six. But as we explained in another case involving a challenge to the sufficiency of the evidence underlying a conviction for aiding and abetting a § 924(c) firearm offense, evidence showing a defendant had the required knowledge of a firearm "need not be direct." *United States v. Benson*, 957 F.3d 218, 238 (4th Cir. 2020). Instead, such knowledge can be proven solely through circumstantial evidence. *Id.* at 238–39. Here, Murray and Johnson's "focus on the types of evidence missing from the government's presentation ignores what the government did present []: other evidence on which the jury could have reasonably relied in convicting" the defendants. *Moody*, 2 F.4th at 190.

**1.**

We start with Murray. The record shows that he had lived in the mobile home for one to two months at the time of the events at issue in this case, and that he was the "primary occupant." While living there, Murray said that he was working on a drywall and painting project to fix up the inside of the home.

We recite these facts because Murray's status as an occupant of the mobile home is relevant to his knowledge of the firearms found there. As we have repeatedly recognized, when contraband is found in a defendant's home, this fact generally "permits an inference" that the defendant had constructive possession over that contraband. *United States v. Shorter*, 328 F.3d 167, 172 (4th Cir. 2003); *United States v. Hicks*, 64 F.4th 546, 553 (4th

9

Cir. 2023); *see also United States v. Kimbrough*, 477 F.3d 144, 147 n.5 (4th Cir. 2007) ("[A] fact-finder could infer [the defendant]'s possession of [a] gun from its presence in the basement in which he lived.").[4]

The fact that Murray was not the only occupant of the mobile home does not preclude the jury from inferring he had knowledge of the firearms. To be sure, we have recognized that "mere joint tenancy of a residence is insufficient to prescribe possession of its contents to all the occupants." *United States v. Blue*, 808 F.3d 226, 232 (4th Cir. 2015) (cleaned up). In joint occupancy cases, therefore, we require "some additional nexus linking the defendant to the contraband." *Id.* (citation and quotation marks omitted). Here, that nexus is satisfied by the evidence at trial showing Murray both had access to and had been in the front room of the mobile home. *See United States v. Hall*, 858 F.3d 254, 280–81 (4th Cir. 2017). Murray acknowledges that some of his personal belongings were found in the front room and concedes that this evidence indicates he was in that room at some time.

Nor does the fact that the firearms were not themselves in plain view mean that the jury could not infer Murray's knowledge. *See Shorter*, 328 F.3d at 172. As we suggested in *Shorter*, there may be cases when the home in which contraband is discovered is "so

---

[4] In our constructive possession cases, we frequently consider whether knowledge has been sufficiently proved by circumstantial evidence. We look to that caselaw here because, as earlier noted, knowledge of the presence of contraband is an essential element of constructive possession. *See Moody*, 2 F.4th at 189. The same evidence that suffices to establish constructive possession, in other words, will suffice to prove the knowledge element at issue in this case.

large," or the contraband is "so well hidden," that a reasonable factfinder could not infer that an occupant "was aware of the[] presence" of the contraband. *Id.* In this case, however, the firearms were not hidden; on the contrary, the green bag in which they were stored was visible to anyone in the front room. In fact, the green bag could be seen at several points in the background of the body camera footage played at trial – a fact that was specifically pointed out to the jury. Particularly given the evidence placing Murray in the front room, this case is not one in which the contraband was hidden from or inaccessible to the defendant.[5] The jury reasonably could have concluded that Murray was aware of the green bag and its contents.

Murray contends that the evidence against him establishes only that he was present in the mobile home and cites *United States v. Blue*, 957 F.2d 106, 108 (4th Cir. 1992), to argue that his mere proximity to the firearms was insufficient to prove he knew of or exercised control over them. In *Blue*, 957 F.2d 106, the defendant, a passenger in a car, was arrested after a gun was found hidden under his seat. *Id.* at 107. We reversed his conviction for being a felon in possession of a firearm, holding that the evidence – which consisted only of the location of the gun and the testimony of a police officer that he had seen the defendant's shoulder "dip" as though he was reaching under the seat – was insufficient to find the defendant had constructively possessed the gun. *Id.* at 107–08.

---

[5] Examples of such a case might include *Blue*, 808 F.3d at 233–34, where the contraband in question was "hidden in [a] footstool" in a bedroom to which no evidence connected the defendant, or *Hall*, 858 F.3d at 280, where the contraband was "found inside [a] locked bedroom" and no evidence established that the defendant either had a key to or had ever been inside the room.

Murray's case is unlike *Blue*, 957 F.2d 106, in at least two ways.  First, the defendant in *Blue* was a passenger in the car, the firearm was hidden under the seat, and "no evidence indicated that [he] had ever been in that car before." *Id.* at 108.  Here, in contrast, Murray lived in the home where the firearms were found, and direct evidence linked him to the location where the firearms were stored in a bag visible to anyone in the room.  Our precedents treat these situations differently – we allow an inference of constructive possession when contraband is found in a defendant's home, *Shorter*, 328 F.3d at 172, but not when someone is merely present as a passenger in a car where contraband is found, *Blue*, 957 F.2d at 108.

And importantly, the evidence supporting Murray's conviction goes beyond mere proximity to the firearms.  In fact, the inference that Murray knew about the firearms is bolstered by other evidence in this case.  Recall that a firearm holster was found in plain view on the table in the front room, in close proximity to where the firearms were stored.  We have recognized that a holster or ammunition found in plain view bolsters an inference of knowledge of a firearm found nearby.  *See, e.g.*, *Shorter*, 328 F.3d at 172; *Moody*, 2 F.4th at 193.

Moreover, this was the same table on which the drug evidence was found, prompting one of the deputies to describe it as a "drug-packaging station."  Given the substantial evidence linking Murray to drug trafficking – which resulted in multiple drug convictions, and which Murray does not dispute – the jury could have reasonably inferred that Murray spent time at the table, making it even more likely he had seen the holster.  And because

12

the table was close to where the firearms were stored, the jury also could have inferred that Murray had seen the green bag.

To be clear, the jury was not required to draw any of the inferences described. *See, e.g.*, *Shorter*, 328 F.3d at 172 (explaining that contraband found in a defendant's home "*permits* an inference of constructive possession" (emphasis added)). But each was reasonable, and thus permitted, from the evidence in the record.

**2.**

We turn next to Johnson. The district court determined that a jury could find, based on the government's trial evidence, that Johnson was living in the mobile home, *see Johnson*, 2023 WL 3166168, at *2, 2 n.3, 4, and Johnson does not contest that ruling on appeal. Instead, Johnson concedes that he was a "temporary occupant" or "unofficial subtenant" of the mobile home and acknowledges he had been living there with Murray's permission for approximately a month at the time of the relevant events. Johnson's descriptions of his occupancy status are supported by trial testimony, with one deputy testifying that Murray and Johnson were living in the home at the time, and another that Johnson said he had been in Morgantown for about a month.

Because we agree that the jury could have found that Johnson was an occupant of the mobile home, we start – as with Murray – with the general presumption that the jury could also infer that Johnson constructively possessed, and thus knew of, the firearms recovered from the home. *See Shorter*, 328 F.3d at 172. But we recognize that some of the facts differ between Murray and Johnson and consider those facts in turn.

13

As noted above, there is direct evidence tying Murray to the front room of the mobile home, where the guns were discovered. But there is no direct evidence linking Johnson to that room. Pointing to this gap in the record, Johnson goes a step further, arguing that there is no evidence at all – direct or circumstantial – from which a jury could infer he ever entered the front room or knew about the holster, the green bag, or the guns inside the bag. For two reasons, we disagree.

First, the jury could have found from the evidence presented at trial that the front room of the mobile home was a common area or living room. During the trial, the jury saw body camera footage of all the rooms in the mobile home, allowing jurors to form their own impressions about the function of the room. Pictures of the front room introduced into evidence showed a couch against one wall, as well as food and drink items on shelves. There was no bed in the front room, unlike other rooms in the house. And one of the deputies who testified at trial described the room as "a common area, living room." J.A. 365. Considered together, this evidence is more than sufficient for the jury reasonably to conclude that the front room of the mobile home was a common area or living room. And if the jury made that determination, we agree with the district court that it also could have inferred that Johnson, "as a resident of the home, spent time in the common area." *Johnson*, 2023 WL 3166168, at *4.

Second, much as with Murray, the jury heard significant evidence implicating Johnson in drug trafficking and convicted him of multiple drug offenses. As the district court explained, "the evidence that Johnson was involved in drug trafficking made it more likely that [he] frequented the front room, which contained the table with the drug-

14

packaging paraphernalia." *Id.* We agree that the jury reasonably could have made this inference, given that the front room is where the evidence of drug distribution was found.

Either one of these reasonable inferences would allow the jury to find that Johnson spent time in the front room of the mobile home. And once Johnson was connected to the front room, the jury was permitted, although once again not required, to make all the same reasonable inferences we described in our analysis of Murray's case.[6]

**3.**

In response to the circumstantial evidence and reasonable inferences available to the jury, Murray and Johnson emphasize evidence in the record suggesting that many of the items found in the mobile home belonged to previous owners or occupants of the home, and not to them. For instance, the body camera footage of one of the deputies shows children's stuffed animals on a shelf in one room. During the search of the home, the deputies found personal letters belonging to people other than Murray or Johnson. And one of the deputies testified at trial that Murray told him the furniture and appliances in the mobile home belonged to someone named "Robert Shaffer." J.A. 351–52.

---

[6] Like Murray, Johnson argues the evidence against him establishes only that he was present in the mobile home while the firearms were there and cites *Blue*, 957 F.2d at 108, as support for overturning his conviction. *Blue* is inapposite in Johnson's case for the same reasons as in Murray's: First, Johnson's status as an occupant of the mobile home permits an inference that he constructively possessed the firearms found there, *see Shorter*, 328 F.3d at 172; and, in any event, the holster found in plain view in the front room is evidence that goes beyond Johnson's proximity to the firearms and supports an inference of knowledge, *see id.*; *Moody*, 2 F.4th at 193.

Relying on this evidence, Murray and Johnson posit an alternative explanation for the presence of the firearms in the mobile home: The firearms belonged to someone else, and that person brought the firearms into the home, storing them in the green bag. The defendants highlight the testimony of one of the deputies, who explained that he could not rule out this hypothesis. The inability to rule out this possibility, Murray and Johnson argue, means that the jury could not have found them guilty beyond a reasonable doubt.

We are unpersuaded by this argument. First, Murray and Johnson's alternative explanation is not necessarily inconsistent with the jury's guilty verdict. Assume Murray and Johnson are correct: The firearms were owned by and brought into the mobile home by a different person. That would not preclude Murray and Johnson from having *knowledge* of the firearms' presence – nor would it preclude an inference of constructive possession, based on all the same evidence discussed above.

Second, as we have long recognized, circumstantial evidence "may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence." *United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989). Simply put, the failure to rule out Murray and Johnson's alternative explanation for the presence of the firearms in the front room of the mobile home does not undermine their convictions on Count Six.

The evidence in the record permitted the jury to infer that both Aaric Murray and Richard Johnson had knowledge of the two firearms recovered from the mobile home where they lived. Murray and Johnson's § 924(c)(1)(A)(i) convictions, and the district court's denial of their motions for acquittal, must therefore be affirmed.

16

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*