**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No. 19-4494

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

    v.

TERRANCE DEANDRE DENNIS, a/k/a Sticks, a/k/a Terrence Deandre Dennis,

      Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Mark S. Davis, Chief District Judge. (4:18-CR-00072-MSD-DEM-1)

Argued: September 24, 2021             Decided: December 3, 2021

Before DIAZ, FLOYD, and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Judge Diaz and Judge Richardson joined.

**ARGUED**: Thomas Paul DeFranco, MURPHY & MCGONIGLE, PC, Washington, D.C., for Appellant. Peter Gail Osyf, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee. **ON BRIEF**: Geremy C. Kamens, Federal Public Defender, Amanda C. Conner, Assistant Federal Public Defender, Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Howard J. Zlotnick, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

FLOYD, Circuit Judge:

Dennis appeals a 96-month conviction on several drug and firearm counts arising out of a traffic stop turned high-speed chase in Hampton and Newport News, Virginia. Dennis challenges the sufficiency of the evidence used to convict him. Alternatively, he requests a new trial because the district court allowed the prosecutor to peremptorily strike a Hispanic juror and instructed the jury there is no legal requirement that the government use any specific investigative techniques to prove its case. This case, like our recent decision in *United States v. Moody*, 2 F.4th 180, 187 (4th Cir. 2021), brings center stage the "ease with which our law permits conspiracy convictions for conduct that overlaps almost entirely with underlying substantive offenses." But, like in *Moody*, we are constrained by our conspiracy precedent and must affirm on all counts.

I.

A.

Taken in the light most favorable to the government, evidence adduced at trial established the following facts. In August 2018, federal law enforcement officers were conducting a drug trafficking investigation at a shopping plaza in Hampton, Virginia.[1] Stationed around the plaza in several unmarked cars, the officers sought to surveil an individual "P" based on a confidential tip; the officers carried no cameras or recording devices of any kind. Sometime over the course of the morning, a car drove into the plaza

---

[1] The prosecution introduced testimony of what occurred at the plaza to establish that the officers had reason to be in the area, not for the truth of what occurred at the plaza.

and two individuals—the officers would later come to know them as co-defendants Dennis and Guess—got out to speak with P. The conversation lasted only a few minutes, after which Guess returned to the driver's seat of his car, and Dennis to the front passenger's. When the two pulled out of the plaza, Task Force Agent Ryan Boone instructed his entire team to abandon their surveillance of P and follow Dennis and Guess instead. Agent Boone never explained this change in tactic, even though Dennis and Guess were far from the only people who pulled up to speak with P.

After several minutes, Dennis and Guess pulled over, looked around, looked down at their laps, and then resumed driving. The task force continued trailing. Guess soon ran a stop sign, and Agent Boone directed Officers Scott and McAndrew to attempt a stop. The officers activated their emergency equipment, Guess slowed and nearly came to a stop when, suddenly, he accelerated and fled. A high-speed chase ensued, leading the officers through residential neighborhoods and a Waffle House parking lot at speeds reaching 70 miles per hour. At one point, Officer McAndrew observed the car slow down, allowing Dennis to discard a gun and, several moments later, a bag containing a white substance, and then speed up once more. Officer McAndrew immediately radioed his observations.

Guess eventually came to a stop, and the officers pulled Dennis and Guess out of the car. They found a bag of what looked like narcotics concealed in Guess's anal cleft, plastic baggies in Guess's pockets, and a scale in the driver-side door pocket not visible from the passenger's seat. Nothing was found on Dennis, but a loaded gun and another bag containing what appeared to be narcotics were found along the flight route—exactly where Officer McAndrew indicated they would be.

The officers did not go back to the plaza until several months later, long after any possible plaza-shop camera footage had been erased. They did not investigate any ties Dennis or Guess might have had to broader criminal enterprises. P was never arrested. But the officers did conduct a limited forensic analysis of the items recovered after the pursuit. Laboratory testing determined that the packet Dennis discarded contained about 33 grams of heroin mixed with caffeine and the substance Guess secreted away constituted about 3 grams of cocaine base (crack cocaine). The laboratory then tested the residue on the scale and found traces of cocaine, heroin, fentanyl, and caffeine, among others. Another laboratory tested the gun and the heroin packet—but not the scale—for DNA but could not obtain a usable sample. No one dusted for fingerprints.

B.

The grand jury indicted Dennis and Guess on four counts each: conspiracy to possess with intent to distribute heroin, cocaine base, and fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count I); possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count II); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924 (c)(1)(A) and 2 (Count III); and being felons in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2 (Count IV). A joint trial began.

During voir dire, the trial court asked the 56 venirepersons a set list of questions. The court followed up with select venirepersons based on their answers, and a few were called to side bar. The prosecutor then peremptorily dismissed two prospective jurors—

4

one Hispanic and one white—and one alternate, also white. Guess's attorney rejected two prospective black jurors. Dennis's attorney struck none.

Both defendants objected to the final composition of the jury. In a "semi sort of Batson motion," Guess's attorney observed that the panel did not represent defendants' peers because it contained not one juror with dark skin, though he clarified that he did not believe "anybody did anything wrong." J.A. 126, 128. The court explained it had no authority to alter the jury unless defendants were prepared to make a formal motion under *Batson v. Kentucky*, 476 U.S. 79 (1986). Dennis's attorney said she was and challenged the prosecution's peremptory strike of the Hispanic juror, Ms. Ortiz. In response, the prosecutor explained he "was troubled by the fact that [Ms. Ortiz] was a social worker" and was thus likely to "sympath[ize]" with defendants. J.A. 130–31. Dennis's attorney, in turn, pointed out the prosecution accepted another social worker, Ms. Kipper, who was white. But the prosecutor countered Ms. Kipper was a recent victim of an illegal high-speed chase, which allayed concerns over her profession. After hearing the prosecutor's explanation and Dennis's attorney's concession that she "d[id]n't think that personally," the prosecutor was biased "at all," the district court denied the *Batson* challenge. *Id.* at 135. The court did not "think that a *prima facie* case ha[d] been shown," and, in any event, "the government ha[d] offered a legitimate reason for its determination and a reason for the distinction between the two workers." *Id.* at 133.

The case proceeded to trial, where several task-force officers testified about the high-speed chase and the evidence they recovered. The prosecution's expert then opined the amount of heroin alone—about 33 grams, valued at $6,600—indicated Dennis was

5

distributing rather than using the drug, for users typically possess between 0.01 and 1 gram only. He also explained that Guess's hiding of the cocaine signaled distribution because users usually hold cocaine in their pockets or even their hands—somewhere easily accessible. He finally advised that the scale, the gun, and the plastic bags were all tools of the drug-trafficking trade. At the close of the government's evidence, defendants moved for judgments of acquittal under Federal Rule of Criminal Procedure 29 (Rule 29). The district court denied the motions, and neither defendant presented any additional evidence. The jury convicted Dennis on all counts and convicted Guess for conspiracy and possession with intent to distribute (Counts I and II).

The district court sentenced Dennis to concurrent 36-month sentences on Counts I, II, and IV, consecutive 60 months on Count III, and 5 years of supervised release. Dennis now appeals, contending the district court erred at three key steps. First, the court wrongly allowed the prosecutor to peremptorily strike Ms. Ortiz. Second, the court improperly denied his Rule 29 motion for acquittal. Third, the court mistakenly instructed the jury there was no legal requirement for the government to use any specific investigative techniques to prove its case, such as fingerprinting or DNA analysis. We address these in turn.

## II.

Dennis centers his *Batson* challenge on the prosecution's strike of Ms. Ortiz, a Hispanic juror with dark skin, which, he argues, impermissibly resulted in a jury without a single person who had dark skin. *Batson* challenges proceed along a familiar three-step

6

inquiry.  A defendant must first make a prima facie showing that a peremptory challenge was based on racial considerations; the burden then shifts to the prosecution to offer a racially neutral reason for the strike; finally, the trial court determines whether a defendant has shown purposeful discrimination.  *See Snyder v. Louisiana*, 552 U.S. 472, 477–78 (2008).  "[T]he prosecutor must give a clear and reasonably specific" race-neutral explanation, and the court must consider "all relevant circumstances."  *Miller-El v. Dretke*, 545 U.S. 231, 239–40 (2005) (quoting *Batson*, 476 U.S. at  96–98 & n.20).

On appeal, we sustain the trial court's ruling unless clearly erroneous.  *Snyder*, 552 U.S. at 477.  This "highly deferential" standard affords appropriate weight to the trial court's evaluations of whether the prosecutor's conduct "belies a discriminatory intent" and whether the juror's demeanor "exhibited the basis for the strike attributed to the juror by the prosecutor."  *Id.* at 477, 479; *see also Flowers v. Mississippi*, 139 S. Ct. 2228, 2244 (2019).

Dennis insists the prosecutor's explanation—that it struck Ms. Ortiz for being a social worker—was transparently pretextual.  The government disagrees, but also urges us to resolve this case on the prima facie step because this Court has long held "a showing that a [juror with dark skin] has been struck, standing alone," "insufficient" to trigger a *Batson* challenge.  *Nickerson v. Lee*, 971 F.2d 1125, 1134 (4th Cir.), *as amended* (Aug. 12, 1992); *see also United States v. Malindez*, 962 F.2d 332, 333 n.2 (4th Cir. 1992); *United States v. Lane*, 866 F.2d 103, 105 (4th Cir. 1989).  Dennis responds that the strike did not stand alone—it resulted in a jury that lacked any persons with dark skin and that context must inform our analysis.

7

The Supreme Court addressed a variation on that argument in *Snyder*, which involved two questionable strikes:  "[I]f there were persisting doubts as to the outcome," the Court reasoned, we "would be required to consider the strike of [the second juror] for the bearing it might have upon the strike of [the first juror]" because the second strike helps contextualize the prosecutor's motive.  552 U.S. at 478.  This case presents a more nuanced question because the context Dennis asks us to consider does not offer positive evidence of bias, rather we simply do not know what would have happened had the prosecutor faced other jurors with dark skin.  The courts have widely—and correctly—acknowledged that even "one racially discriminatory peremptory strike is one too many." *Flowers*, 139 S. Ct. at 2241.  And we could conceive of a rule that would allow a defendant, in such narrow circumstances, to pass the prima facie step by showing that the prosecution struck the one juror with dark skin there was to strike.

The rub for Dennis, however, is that the prosecutor's strike here does not present these narrow circumstances.  There was not just one juror with dark skin, there were three.  And the prosecutor did not strike the other two—Dennis's co-defendant Guess did.  That is, unlike our hypothetical scenario where we lack data of what the prosecutor would have done had there been other jurors with dark skin, we know for a fact the prosecutor did *not* strike such other jurors here; he only struck Ms. Ortiz.  So we have no reason to lower the prima facie standard.  Left with only the bare fact that the prosecutor rejected one juror with dark skin, we conclude Dennis failed to adduce sufficient prima facie evidence to trigger a *Batson* challenge.  *Cf. United States v. Barnette*, 211 F.3d 803, 812 (4th Cir. 2000) (finding no *Batson* violation where "the parties only struck a total of three black jurors,"

8

including one struck by defendant and another who defendant conceded was struck "for legitimate reasons").[2]

Still, this Court takes *Batson* violations very seriously. Serving on a jury is one of the most substantial opportunities that most citizens have to participate in the democratic process. And, on the other side of the coin, a defendant's right to a representative jury undergirds the legitimacy of our justice system. *See Powers v. Ohio*, 499 U.S. 400, 407 (1991). To allay any "persisting doubts," *Snyder*, 552 U.S. at 478, we thus move on to consider whether the prosecutor's explanation was pretextual. *See Evans v. Smith*, 220 F.3d 306, 315 n.2 (4th Cir. 2000) (citing *Hernandez v. New York*, 500 U.S. 352, 359 (1991) (plurality)). We conclude it was not.

The prosecutor attributed his strike to the juror's profession. He "was troubled by the fact that [the Hispanic juror] was a social worker." J.A. 130. His daughter is a social worker, he clarified, and based on interactions with her, he was concerned that social workers tend "to be sympathetic towards the defendants." *Id.* at 131. Hearing that explanation, Dennis's attorney noted the prosecutor accepted a white social worker, Ms. Kipper. But the prosecutor clarified the white social worker also happened to be "a victim of a crime" involving a "high-speed chase," which "outweighed the fact that she was a

---

[2] While our analysis must focus on whether *the prosecutor* struck the juror on an impermissible motive, we observe that the trial court did not simply wave away Dennis's concerns over the jury's composition. The court asked whether any attorney was aware of any authority that would permit reseating the jury because it contained no people of Dennis's race. And when no one offered such an authority, the court offered the parties a further opportunity to confer to attempt a resolution. But Dennis's attorney merely replied, "I don't know. I don't know [what the solution is]. I've never come across this." J.A. 135. The court then seated the jury.

social worker." *Id.* at 132. "[I]f it had only been the fact that she was a social worker," he added, he "would have certainly made the challenge," too. *Id.* Dennis asks us to disbelieve that explanation: "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered." *Miller-El*, 545 U.S. at 241. But the proffered reason here did not "appl[y] just as well" to Ms. Kipper. Dennis and Guess led the police on a 70-mile-per-hour chase through residential streets and parking lots, and the district court reasonably concluded that the prosecutor genuinely believed Ms. Kipper's recent trauma outweighed any qualms over her job. This is not a case where the trial court "failed to conduct a comparative juror analysis." *State v. Hobbs*, 374 N.C. 345, 359 (2020). Or a case where the trial court's conclusion cannot be defended on the record. We cannot say the district court clearly erred.

We reiterate our commitment to rooting out "prejudices" that operate to deny certain persons "the full enjoyment" of a neutral jury. *Miller-El*, 545 U.S. at 237 (citation omitted). But we do not agree that Dennis stands on a similar footing to defendants who have succeeded on their *Batson* challenges in cases Dennis offers in comparison. To begin, jurors in those cases were evaluated along a single axis. The accepted white juror either expressed equally strong death-penalty hesitations as the struck black juror or not, *id.* at 241–47; *Reed v. Quaterman*, 555 F.3d 364, 378 (5th Cir. 2009); was either as busy as the black juror or not, *Snyder*, 552 U.S. at 482; either knew as many witnesses as the black juror or not, *Flowers*, 139 S. Ct. at 2249. If the court determined there was no real distinction—because, for example, the prosecutor mischaracterized the black juror's

10

testimony—that was the end of the inquiry. But here, the prosecutor never argued that Ms. Ortiz's social-worker status somehow distinguished her from Ms. Kipper; rather, the prosecutor pointed to an independent reason he accepted Ms. Kipper *even though* both jurors were social workers. That fits comfortably within our precedent, *United States v. Dinkins*, 691 F.3d 358 (4th Cir. 2012). There, the prosecution dismissed a black juror because, among other reasons, she needed to care for four young children. *Id.* at 380. The defendant insisted that another white juror experienced similar difficulties, but the government retorted that the white juror was married to a deputy sheriff, which "was going to be much more favorable to the government." *Id.* at 381 (internal quotation marks omitted). We accepted that rationale. And that describes this case.

The cases Dennis puts up also involved "dramatically disparate questioning of black and white prospective jurors," which revealed the prosecutors' biases. *Flowers*, 139 S. Ct. at 2246. Consider *Snyder*, where the Court faulted the prosecutor for attempting to elicit assurances from the white juror that he would be able to serve despite his work and family obligations but failing to follow up with the black venireman. *Snyder*, 552 U.S. at 484. Or *Flowers*, where the prosecutor asked the 5 struck black jurors a total of 145 questions, but only asked the 11 seated white jurors a total of 12 questions. 139 S. Ct. at 2246–47. Same in *Miller-El*, where the prosecutor shuffled the venire panel, making it so that certain sections contained mostly black panel members and other sections contained mostly white ones. 545 U.S. at 254. He then described the death penalty in "graphic" terms to the majority-black panels but not to the majority-white panels in a transparent attempt to influence venirepersons' reported attitudes towards the death penalty. *Id.* at 255–60. Even

11

in *Reed*, where questioning was much less problematic—the prosecutor excluded a juror for working in the medical field without questioning her about her profession—there was good reason to doubt the prosecutor's motives. For earlier in the trial, the prosecutor stated, "I don't even know why that question about whether the juror or a juror's relative ever worked in a hospital is on the juror questionnaires." 555 F.3d at 377.

Nothing close to such abuse occurred here. There was no pattern of disparate questioning and no lopsided attempts to rehabilitate the white juror. Unlike in *Snyder*, the prosecutor did not seek assurances from Ms. Kipper that her job would not impact her judgment. Nor, on the flip side, did he ask targeted questions of Ms. Ortiz in hopes of eliciting harmful testimony about her job. We must also be mindful that the prosecution had very little opportunity to ask any questions at all. Unlike the unrestrained voir dire the prosecution was able to conduct in the death-penalty cases Dennis cites, here, *the judge* asked the questions, and the prosecution could only follow up with jurors called to side bar. That is how the prosecution found out about Ms. Kipper's recent trauma. We can find nothing nefarious in that. Nor could Dennis's attorney, at the time of the trial at least. She acknowledged she had "nothing against [the prosecutor]," "d[id]n't think that personally," the prosecutor was biased "at all," and was instead merely "troubled" by the overall composition of the jury. J.A. 135. That admission perfectly illustrates the kind of credibility-based rulings a trial court must make in adjudicating *Batson* challenges and counsels affirmance.

III.

Dennis next challenges the district court's denial of his Rule 29 motion because "the evidence [wa]s insufficient to sustain a conviction" on any of the four counts. Fed. R. Crim. P. 29(a). When bringing such a challenge, a defendant "faces a heavy burden," *United States v. Bonner*, 648 F.3d 209, 213 (4th Cir. 2011) (citation omitted)—this Court must give full play to the jury to resolve testimonial conflicts, weigh the evidence, and "draw reasonable inferences from basic facts to ultimate facts," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We must consider both circumstantial as well as direct evidence. *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008). A conviction may rest entirely on circumstantial evidence. *Id.* And while we review the district court's conclusions *de novo*, we can reverse a conviction only where no reasonable juror "could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Dennis cannot clear that high bar on any count.

A.

We begin with possession of heroin with intent to distribute (Count II) and being a felon in possession of a firearm (Count IV). To convict on Count II, the jury had to find beyond a reasonable doubt that Dennis (1) possessed the heroin (2) knowingly and (3) with intent to distribute. *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (en banc). Dennis does not meaningfully contest that whoever possessed the heroin meant to distribute it. After all, the quantity of heroin alone—about 33 grams worth $6,600— afforded the jury a reasonable ground to conclude the drug was not for personal use. And

13

the presence of a scale with drug residue, plastic baggies, a large amount of cocaine on Guess's person, and the gun all lend further evidentiary support to such an inference. Instead, Dennis protests the evidence was insufficient to prove *he* possessed the heroin.

The same goes for Count IV. The government had to prove that (1) Dennis was a felon, (2) he "voluntarily and intentionally possessed a firearm," and (3) the firearm "traveled in interstate commerce." *See United States v. Adams*, 814 F.3d 178, 183 (4th Cir. 2016) (quoting *United States v. Gallimore*, 247 F.3d 134, 136 (4th Cir. 2001)). Dennis has stipulated he was a felon,[3] and he does not contest that the firearm has crossed state lines. The only question, again, is whether Dennis actually possessed the gun.

Dennis's leading argument is that Officer McAndrew was simply not credible when he testified he saw Dennis throw the heroin and the gun from the car. For one, Dennis observes, Officer McAndrew testified at trial he saw "Dennis's arm" stretch out of the passenger-seat window, but Officer McAndrew's initial police report stated only that he saw "Dennis" discard the two items. For another, Officer McAndrew was the only officer to supposedly see Dennis dispose of the items. And no physical evidence linked Dennis to the drugs or the gun—even though it was a hot day, meaning that Dennis would have likely left traces of his sweat on the two items had they really belonged to him.

---

[3] *Rehaif v. United States*, 139 S. Ct. 2191 (2019), requires the district court to instruct the jury that it must find the defendant knew he was a felon. The court failed to do so here, but Dennis does not seek relief on this ground—and with good reason. After *Greer v. United States*, 141 S. Ct. 2090, 2100 (2021), no relief could be afforded to Dennis unless he argued "that he would have presented evidence at trial that he did not in fact know he was a felon."

None of this entitles Dennis to acquittal. Sufficiency-of-the-evidence challenges are about what constitutes a proper inference for a jury to draw in making determinations of guilt. Quarrels over witness credibility thus have no place in our analysis. *See United States v. Zelaya*, 908 F.3d 920, 926 (4th Cir. 2018), *cert. denied sub nom. Gavidia v. United States*, 139 S. Ct. 855 (2019). Officer McAndrew testified that, regardless of the precise wording of the report, he had "no doubt" Dennis was the person who jettisoned the heroin and the gun. J.A. 374. The jury was entitled to rely on that testimony—and on the common-sense supposition that a driver fleeing through residential neighborhoods at speeds approaching 70 miles per hour was unlikely to discard two items out of the *passenger's* window. The jury also could have easily rejected Dennis's suspicions about Officer McAndrew being the only officer to see Dennis throw the drugs and the gun. Officers Scott and McAndrew were the only officers in the car immediately following defendants, and Officer Scott, as the driver, could have been reasonably concentrating on the pursuit.

The lack of DNA evidence is also largely beside the point. Dennis concedes that someone in the car threw the two items; he only argues the evidence does not clearly establish which defendant did the throwing. Because the DNA analysis did not reveal *any* DNA traces, it does not bear on Dennis's guilt one way or the other. That officers conducted no fingerprint analysis does give us some pause. But at day's end, the jury was entitled to take Officer McAndrew at his word.

Dennis finally invokes *United States v. Sperling*, 400 F. App'x 765, 767–68 (4th Cir. 2010), where this Court reversed a defendant's § 922(g)(3) firearm conviction that

15

rested largely on defendant's own admission of drug use.[4]  True, in *Sperling*, we reasoned that "a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused made after commission of a crime."  *Id.* (quoting *United States v. Abu Ali*, 528 F.3d 210, 234 (4th Cir. 2008)) (cleaned up).  We accordingly asked not "whether there was sufficient evidence to convict 'including' Sperling's admissions, but whether there was sufficient independent evidence to corroborate those admissions."  *Id.* at 768.  Because the prosecution there failed to present such evidence, we reversed the conviction.  But officer testimony about a defendant's admissions differs in kind from testimony about what the officer observed with his own eyes.  We have long recognized that "the uncorroborated testimony of one witness . . . may be sufficient to sustain a conviction."  *United States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997).  And we have never held that principle inapplicable to police officers.  Nor was Officer McAndrew's testimony uncorroborated—the task force found the gun and the drugs exactly where Officer McAndrew said they would be.  The jury could have reasonably concluded that because Officer McAndrew told the truth about the location of the items, he also told the truth about who discarded them.  In short, there was sufficient evidence to find Dennis possessed the heroin and the drugs. [5]

---

[4] Section 922(g)(3) criminalizes the possession of a firearm by a person "who is an unlawful user of or addicted to any controlled substance."  18 U.S.C. 922(g)(3).

[5] The government alternatively argues the jury could have convicted Dennis for firearm possession under *Pinkerton v. United States*, 328 U.S. 640 (1946), as Guess's co-conspirator or under *Rosemond v. United States*, 572 U.S. 65 (2014), as an aider-and-abettor.  Because the jury acquitted Guess on both firearms counts, we need not consider these alternative theories.

16

B.

Dennis also protests his conviction for possessing a firearm in furtherance of drug trafficking (Count III). Conviction required the jury to find that Dennis (1) committed a drug trafficking offense and (2) possessed a firearm (3) in furtherance of that drug offense. *United States v. Lomax*, 293 F.3d 701, 704–05 (4th Cir. 2002). The jury's verdict on Counts II and IV and our holdings above resolve the first two elements. As to furtherance, juries in this Circuit may examine "a variety of factors," including the type of drug offense, the type of firearm, its proximity to drugs, whether the firearm is possessed legally, and whether the firearm is loaded. *Moody*, 2 F.4th at 192 (citing *Lomax*, 293 F.3d at 705).

The facts here closely parallel those we have already considered and resolved in *Moody*. As in that case, the gun was "loaded," it was "found near the [heroin]," the heroin had a high street value, Dennis "possessed the gun[ ] illegally," and the expert testified "that dealers carry semi-automatic pistols as protection." *Id.* at 194 n.4. Indeed, Dennis did not merely *keep* the gun near the heroin, he *threw away* the gun seconds before throwing away the heroin. And so a reasonable juror was well entitled to infer that Dennis himself perceived a connection between the gun and the heroin. To be sure, a jury could have also reasonably concluded that Dennis disposed of the gun simply because he was a convicted felon. But where the evidence is "capable of more than one interpretation and reasonable inferences therefrom can be drawn by a jury, its verdict should not be disturbed." *United States v. Gomez-Jimenez*, 750 F.3d 370, 379 (4th Cir.), *as corrected* (Apr. 29, 2014) (citing *Glasscock v. United States*, 323 F.2d 589, 591 (4th Cir.

17

1963)).  The jury "was not required to accept" Dennis's alternative account of why he possessed the gun, and we will not "second guess" that credibility determination. *Lomax*, 293 F.3d at 706.

Dennis cites several cases from our sister circuits for the proposition that "mere presence" of a gun near narcotics will not suffice. *See United States v. Ceballos-Torres*, 218 F.3d 409, 414 (5th Cir. 2000); *United States v. Krouse*, 370 F.3d 965, 968 (9th Cir. 2004).  True enough, but that is not this case.  Indeed, *Ceballos-Torres* and *Krouse* support Dennis's conviction.  The Fifth Circuit applied the same *Lomax* factors this Court considers, reasoning that "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, . . . whether the gun is loaded, [and] proximity to drugs" may all indicate the gun is not merely present. *Ceballos-Torres*, 218 F.3d at 414–15.  And while the Ninth Circuit declined to mechanically apply those factors, it nonetheless affirmed a § 924(c) conviction where the gun was "strategically located within easy reach in a room containing a substantial quantity of drugs." *Krouse*, 370 F.3d at 968; *cf. United States v. Iiland*, 254 F.3d 1264, 1274 (10th Cir. 2001) (reversing a § 924(c) conviction where the prosecution presented no evidence "the gun and drugs were ever kept in the same place or that [the defendant] ever kept the gun accessible when conducting drug transactions").

Considering the evidence presented "in cumulative context" and in the light most favorable to the government, *Moody*, 2 F.4th at 193 (quoting *Burgos*, 94 F.3d at 863), we conclude that a jury could find beyond a reasonable doubt that Dennis possessed the gun to protect the heroin he was carrying.

18

C.

Dennis last challenges his Count I conspiracy conviction. The essence of conspiracy is an agreement to commit a crime. *United States v. Laughman*, 618 F.2d 1067, 1074 (4th Cir. 1980). That agreement is what "distinguishes conspiracy from the completed crime." *United States v. Hackley*, 662 F.3d 671, 679 (4th Cir.), *as corrected* (Dec. 20, 2011). The government accordingly had to establish that (1) there was an agreement to possess heroin, cocaine, or fentanyl with intent to distribute; (2) both Guess and Dennis knew of that conspiracy; and (3) they both knowingly and voluntarily entered into that conspiracy. *Id.* at 678 (citing *United States v. Yearwood,* 518 F.3d 220, 225–26 (4th Cir.2008)). Because Dennis and Guess are the only defendants in this case, proof of an agreement between them sufficed to also "constitute proof of knowledge of this limited conspiracy." *Moody*, 2 F.4th at 194.

Over the years, we have recognized that the jury need not rely on direct evidence but may infer conspiracy from the facts and circumstances of the case. *Laughman*, 618 F.2d at 1074. And, as with any sufficiency-of-the-evidence challenge, we have assumed the jury resolved any issues of credibility in the government's favor. *Hackley*, 662 F.3d at 678. At the same time, we have admonished the government to show more than that defendants committed the underlying substantive offense to prove conspiracy—a separate and distinct crime, punished with a separate and distinct sentence. *See Moody*, 2 F.4th at 194; *see also Hackley*, 662 F.3d at 681 ("[T]he government must take care not to ask the jury to infer an agreement based on guilt of" underlying offenses alone.). That something

19

more may be defendants' "relationship with other members of the conspiracy, the length of this association, [their] attitude, conduct, and the nature of the conspiracy." *United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir. 1984).

Even on that understanding, however, this Court has never demanded too detailed a showing from the government. We have affirmed conspiracy convictions where the government "presented very little evidence about the relationship between [defendants] beyond traveling in the same car" and acknowledging some sort of prior relationship— without "descri[ption of] the nature or duration of their relationship," "evidence of any prior conversations or meetings that might suggest the formation of a plan," or "testimony about the various roles different defendants played in the conspiracy." *Moody*, 2 F.4th at 195. We felt compelled to do so because, under established Circuit precedent, the government need only show "some evidence" of a relationship between defendants and because "a reasonable jury could infer from [defendants'] joint possession of the . . . pistols that they planned" their venture "in advance." *Id.*; *see also Hackley*, 662 F.3d at 678, 680 (feeling "constrained" to affirm a conviction at "the very boundary of what passes for substantial evidence of a conspiracy" "because the government's evidence of 'continuing relationships and repeated transactions,' although sparse, [wa]s sufficient to support an inference of an ongoing relationship between" a defendant and his suppliers).

We feel similarly constrained to affirm the conviction here, though this case illustrates "how easily substantive law and conspiracy layer onto each other in the context of joint possession, despite the lack of any evidence suggesting a broader conspiracy, either in terms of members or duration." *Moody*, 2 F.4th at 196. This conspiracy charge rests

20

solely on the items found and conduct observed during just one interaction with Dennis and Guess. No other evidence was presented of defendants' relationship (to each other or anyone else) or of surveillance from any other time. And the prosecution introduced no evidence of wiretaps, undercover transactions, or video footage from the plaza stores. *Compare with United States v. Yearwood*, 518 F.3d 220, 224 (4th Cir. 2008) (laying out evidence of "a longstanding social and business relationship"); *United States v. Carmichael*, 685 F.2d 903, 907, 909 (4th Cir. 1982) (describing multiple meetings at the defendant's lake house); *United States v. Caudle*, 758 F.2d 994, 996 (4th Cir. 1985) (reporting prior meetings to discuss criminal plans); *United States v. Chambers*, 985 F.2d 1263, 1270 (4th Cir. 1993) (offering testimony of co-conspirator as to the contribution of other co-conspirators), *superseded on other grounds by* U.S.S.G. § 3B1.1 cmt. 2.

Still, the prosecution linked each defendant to the drug trade: Dennis actually possessed a distribution amount of heroin and a gun; Guess actually possessed a distribution amount of cocaine, plastic bags, and a scale. From that evidence alone, the jury could have easily inferred that the two drug traffickers did not end up in the same car fleeing from police by coincidence. The jury could have also considered the fact that Guess accelerated *while* Dennis disposed of the evidence. That signals a shared consciousness of guilt. Of course, a different jury could have concluded, as Dennis urges, that all this was mere happenstance; Dennis knew nothing of the cocaine concealed on Guess's person or the scale tucked into the driver's door; the coordinated escape plus disposal of the evidence demonstrated only an agreement to evade arrest. But here again, "potentially innocent" alternative explanations cannot sustain a sufficiency challenge. *Moody*, 2 F.4th at 191.

21

"The jury, not the reviewing court, resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." *United States v. Seigler*, 990 F.3d 331, 339 (4th Cir. 2021) (ellipsis omitted) (quoting *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994)); *accord Jackson*, 443 U.S. at 326; *Burgos*, 94 F.3d at 858.

There is more. Some of the scale residue comprised the same drug-and-cutting-agent combination (heroin plus caffeine) as the packet Dennis discarded. Dennis persists he could not see the scale from his passenger position, never mind the residue, but that cuts the other way. It implies Dennis had used the scale on *prior* occasions to weigh his heroin-caffeine concoction—just like a fingerprint on the inside of a drug packet in *Burgos* offered "highly material" evidence of prior cooperation. *See* 94 F.3d at 872–73.[6]

Dennis continues that the scale had residues of other drugs, such as cocaine and fentanyl, that the prosecution never even attempted to connect to him. But conspirators need not know "all of the details of the conspiracy," provided they know its "essential object." *United States v. Goldman*, 750 F.2d 1221, 1227 (4th Cir. 1984). Here, the jury could have convicted Dennis of conspiracy to distribute heroin even if it also found that Dennis knew nothing of Guess's sales of fentanyl and cocaine. As we explained in *Burgos*, a conspiracy conviction does not demand "evidence of a *specific* agreement to commit

---

[6] The government offered no testimony that caffeine is a rare cutting agent or that caffeine is used solely to cut heroin. But Dennis does not raise this objection. And "[e]ven 'weak' evidence of guilt that may not be sufficient to convict on its own can nonetheless be evidence that—when coupled with other evidence—supports a sufficiency determination." *Seigler*, 990 F.3d at 339 (citation omitted).

a *specific* crime, for the same criminal purpose, on the part of all indicted conspirators." 94 F.3d at 860 (abrogating *United States v. Bell*, 954 F.2d 232, 237–38 (4th Cir. 1992), and *United States v. Giunta*, 925 F.2d 758, 764 (4th Cir. 1991)). It can instead comprise a "loosely-knit association of members linked only by their mutual interest in sustaining *the overall enterprise* of catering to the ultimate demands of a particular drug consumption market." *United States v. Nunez*, 432 F.3d 573, 578 (4th Cir. 2005) (emphasis added) (quoting *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993)). The evidence presented readily stacks up to this threshold.

One technical point demands resolution before Count I can be put to rest. Dennis demurs there was no evidence he agreed to distribute heroin, cocaine, *and* fentanyl, yet that is what the indictment charged. Dennis misunderstands the fundamental pleading standards, which require "an indictment charge in the conjunctive to inform the accused fully of the charges." *United States v. Lowery*, 64 F. App'x 879, 881 (4th Cir. 2003) (quoting *United States v. Klein*, 850 F.2d 404, 406 (8th Cir. 1988)). That means the government was right to submit an indictment as to heroin, cocaine, "and" fentanyl. The jury's verdict, in turn, "stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420 (1970). That is because the underlying statute requires only intent to distribute "*a* controlled substance." 21 U.S.C. § 841(a)(1) (emphasis added). In sum, indictments charge in the conjunctive, but proof in the disjunctive is enough to convict.

To require conviction on all three substances, then, "would improperly add elements to the crime that are not contained in the statute itself." *Lowery*, 64 F. App'x at 881

23

(quoting *United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001), *cert. denied,* 534 U.S. 1034 (2001)). Put another way, "when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction." *Musacchio v. United States*, 577 U.S. 237, 243 (2016). The indictment was therefore proper, and the jury's conviction stands.

IV.

Dennis last contends the district court abused its discretion when it instructed the jury that the government was not obligated to use any particular investigative techniques such as fingerprints or DNA. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 408 (4th Cir. 1999) (reviewing challenges to jury instructions for abuse of discretion). Dennis contends the instruction is both unnecessary and harmful to his defense. It is unnecessary, he reasons, because several academic studies have shown that most jurors do not harbor increased expectations for forensic evidence after watching forensic television dramas. And it is harmful because it all but directly taught the jury not to afford any weight to the critical piece of Dennis's defense—that the government conducted a shoddy investigation.

This Court has held such instructions proper since 1992, *United States v. Mason*, 954 F.2d 219, 222 (4th Cir. 1992), and has reaffirmed this practice as recently as two years ago, *United States v. Holloway*, 774 F. App'x 147, 148 (4th Cir. 2019). Although Dennis invites us to reconsider that precedent, we are not at liberty to "overrule a decision issued by another panel." *United States v. Williams*, 808 F.3d 253, 261 (4th Cir. 2015). Nor do

24

we see a need to do so in this case. The court below's instruction, "taken as a whole," "fairly states the controlling law." *United States v. Moye*, 454 F.3d 390, 398 (4th Cir. 2006) (quoting *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir.1990)). The district court "did not mislead the jury into believing that it could not consider and weigh the type of evidence that was presented." *United States v. Brown*, 474 F. App'x 945, 946 (4th Cir. 2012). Quite the opposite: It took care to explain that "the jurors *could* consider the evidence and argument by counsel that the Government did not utilize specific investigative techniques in deciding whether the Government met its burden of proof." *Holloway*, 774 F. App'x at 148 (emphasis added). And if the academic studies Dennis cites correctly find that jurors do not necessarily expect the government to prove its case through involved forensic analysis, then what is the harm in giving such an instruction? At bottom, we see no reason to think the district court prejudiced Dennis's defense.

V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.