**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-4022

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PIERRE YVELT ALMONOR,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:18-cr-00206-MOC-SCR-1)

Submitted:  December 1, 2025                    Decided:  December 16, 2025

Before NIEMEYER and QUATTLEBAUM, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Rene L. Valladares, Federal Public Defender, Jeremy C. Baron, Lauren B. Torre, Assistant Federal Public Defenders, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Las Vegas, Nevada, for Appellant. Dena J. King, United States Attorney, Julia K. Wood, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal jury convicted Pierre Yvelt Almonor of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The district court sentenced Almonor to 51 months of imprisonment, followed by two years of supervised release. The court also imposed restitution for the victims of the conspiracy in the amount of $542,640.92. On appeal, Almonor argues that: (1) the district court erred under *Batson v. Kentucky*, 476 U.S. 79 (1986) in overruling his challenge to the Government's use a peremptory strike on an African American juror; (2) the court erred in finding that the Government demonstrated by a preponderance of the evidence that venue was proper; (3) the court's jury instructions on venue and multiple conspiracies failed to adequately state the law; (4) there was a fatal variance between the indictment and the proof at trial; (5) the court abused its discretion in admitting emails that predated the dates of the charged conspiracy; (6) the court erred in calculating the loss attributable to Almonor under the Sentencing Guidelines and for purposes of calculating restitution; (7) the court erred in applying an enhancement under the Guidelines for being in the business of money laundering; and (8) the court plainly erred in imposing two of the discretionary conditions of supervised release. For the following reasons, we affirm.

The charged conspiracy involved a business email scheme in which some coconspirators targeted businesses with emails redirecting funds for payments in real estate transactions into accounts owned by other coconspirators. Once the businesses wired the funds into the accounts, the coconspirators who owned the accounts, including Almonor, transferred those funds to domestic and offshore accounts owned by the coconspirators. At

2

trial, the Government provided evidence of two such scams, one targeting a business and property transaction in North Carolina and one targeting a property transaction in Illinois; for the latter transaction, the funds were wired into Almonor's account, and he transferred the funds to several different coconspirators' accounts in other countries.

Almonor first argues on appeal that the district court erred in overruling his *Batson* challenge to the Government's use of a peremptory strike to excuse an African American juror from the panel. A *Batson* challenge involves a three-step inquiry: "A defendant must first make a prima facie showing that a peremptory challenge was based on racial considerations; the burden then shifts to the prosecution to offer a racially neutral reason for the strike; finally, the trial court determines whether a defendant has shown purposeful discrimination." *United States v. Dennis*, 19 F.4th 656, 662 (4th Cir. 2021). The government "must give a clear and reasonably specific race-neutral explanation, and the court must consider all relevant circumstances." *Id.* (citation modified). "On appeal, we sustain the trial court's ruling unless clearly erroneous." *Id.* (citation modified). This standard is highly deferential. *Id.* We have reviewed the record and conclude that the district court did not clearly err in overruling Almonor's *Batson* challenge to the Government's use of its peremptory strike.

Almonor next argues that the court erred in finding that venue was proper in the Western District of North Carolina. We review "de novo whether there was sufficient evidence to support" a finding of venue, and will uphold the finding of venue if, "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found venue by a preponderance of the evidence." *United States v.*

3

*Sterling*, 860 F.3d 233, 241 (4th Cir. 2017).  Venue for a money laundering conspiracy is proper in any "district where an act in furtherance of the attempt or conspiracy took place." 18 U.S.C. § 1956(i)(2).  "As to where the conduct element of a conspiracy offense takes place, we have explained that conspiracies operate wherever the agreement was made or wherever any overt act in furtherance of the conspiracy transpires, which may include a place where the defendant has never set foot." *United States v. Ojedokun*, 16 F.4th 1091, 1107 (4th Cir. 2021) (citation modified).

"Proof of acts by one [coconspirator] can be attributed to all members of the conspiracy." *United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995).  Therefore, venue is proper in a conspiracy case in any district in which one conspirator undertook an act in furtherance of the conspiracy, even where the defendant does not know the full scope or all of the members of the conspiracy, and even when the conspiracy does not have "a discrete, identifiable organizational structure." *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993); *see United States v. Green*, 599 F.3d 360, 372-73 (4th Cir. 2010) (finding venue proper in Virginia, where conspirator committed overt act, even where defendant lived and participated in conspiracy from Florida and did not know the coconspirators or full scope of conspiracy).

Almonor's primary challenge to venue rests upon his argument that the Government demonstrated a "rimless wheel" conspiracy.  A rimless wheel conspiracy consists of a central hub—the common defendant, who deals with other defendants—and the spokes—the other conspirators—nothing linking the other conspirators to one another; thus the wheel has no outer rim tying the spokes together.  *See Kotteakos v. United States*, 328 U.S.

4

750, 753-55 (1946).   Where the government demonstrates a rimless wheel conspiracy, there is a "case, not of a single conspiracy but of several." *Id.* at 755.  Almonor argues that there were multiple conspiracies and he was not involved in the conspiracy that defrauded the North Carolina business; because, according to Almonor, the conspiracy in which he participated did not involve any acts occurring in North Carolina, venue in the district court was improper.  We disagree.

"Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." *United States v. Strickland*, 245 F.3d 368, 385 (4th Cir. 2001).  In many situations, there can be "a single conspiracy, with different parties joining and leaving at different times." *United States v. Johnson*, 54 F.3d 1150, 1154 (4th Cir. 1995).  "A single conspiracy exists when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." *Id.* (citation modified).  Here, the conspiracy involved the overlap of the key actors and the same methods, goals, nature, and results in each of the business email schemes.  We conclude, therefore, that the Government demonstrated one large money laundering conspiracy, even if Almonor did not know about the activities of some of the other coconspirators. *See Johnson*, 54 F.3d at 1154 (noting a conspirator can be a member of a conspiracy "without knowing its full scope, or all of its members, and without taking part in the full range of its activities").

Almonor also argues that this court should add a requirement for venue in a money laundering conspiracy that the actions of a coconspirator in the venue must be reasonably foreseeable by the defendant.  While the Second Circuit has adopted such a requirement,

5

*see United States v. Tang Yuk*, 885 F.3d 57, 65 (2d Cir. 2018), no other circuit has done so, *see United States v. Guererro*, 76 F.4th 519, 529 (6th Cir. 2023). Moreover, we have declined to impose a reasonable foreseeability requirement to venue provisions that do not include such a requirement in their plain text. *See United States v. Johnson*, 510 F.3d 521, 527 (4th Cir. 2007) (securities fraud); *see also Ojedokun*, 16 F.4th at 1107 (money laundering conspiracy). We therefore decline Almonor's invitation to add a requirement to the money laundering conspiracy venue provision that does not appear in the plain text of that provision. *See* 18 U.S.C. § 1956(i)(1), (2). As the Government demonstrated a conspiracy in which a conspirator took an act in North Carolina, the district court properly determined that venue was appropriate in the district.

Almonor next argues that the district court's jury instructions on venue and multiple conspiracies were erroneous because the court failed to explain rimless wheel conspiracies to the jury. We review for abuse of discretion the district court's decision whether to give a particular jury instruction, *United States v. Ali*, 735 F.3d 176, 187 (4th Cir. 2013), and review "whether a jury instruction incorrectly stated the law de novo," *United States v. Hassler*, 992 F.3d 243, 246 (4th Cir. 2021) (citation modified). "In reviewing the adequacy of jury instructions, we determine whether the instructions, construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Hassler*, 992 F.3d at 246 (citation modified). This court will not set aside a verdict even if the jury was erroneously instructed "unless the erroneous instruction seriously prejudiced the challenging party's case." *Id.* (citation modified).

6

With respect to the court's multiple conspiracies instruction, "a district court must issue a 'multiple conspiracies' instruction where the evidence supports a finding that multiple conspiracies existed." *United States v. Stockton*, 349 F.3d 755, 762 (4th Cir. 2003). This instruction is not required, however, "unless the proof at trial demonstrates that [the defendant] w[as] involved only in a separate conspiracy unrelated to the overall conspiracy charged in the indictment." *United States v. Nunez*, 432 F.3d 573, 578 (4th Cir. 2005) (citation modified). Moreover, the failure to give a multiple conspiracies instruction is reversible error only where the defendant establishes substantial prejudice by showing that "the evidence of multiple conspiracies [was] so strong in relation to that of a single conspiracy that the jury probably would have acquitted on the conspiracy count had it been given a cautionary multiple-conspiracy instruction." *United States v. Bartko*, 728 F.3d 327, 344 (4th Cir. 2013) (citation modified).

Here, after a discussion with the parties about the multiple conspiracies instruction, the court issued the instruction that Almonor requested. "Under ordinary circumstances, this court will not consider alleged errors that were invited by the appellant." *United States v. Hickman*, 626 F.3d 756, 772 (4th Cir. 2010). Under the invited error doctrine, "a court [cannot] be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request." *United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994) (citation modified). Because the court gave the multiple conspiracies instruction that Almonor requested, he cannot now complain about the adequacy of that instruction.

Almonor next asserts that the proof at trial constructively amended the indictment resulting in a fatal variance. We review de novo whether the district court permitted a fatal

variance to the indictment. *United States v. Miltier*, 882 F.3d 81, 93 (4th Cir. 2018). "A fatal variance occurs when the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." *Id.* (citation modified). "In a conspiracy prosecution, a defendant may establish the existence of a material variance by showing that the indictment alleged a single conspiracy but that the government's proof at trial established the existence of multiple, separate conspiracies." *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994). As we have already determined, the Government demonstrated one money laundering conspiracy and the jury instructions made clear that the jury could only find Almonor guilty if it found he was involved in the money laundering conspiracy charged in the indictment. We therefore conclude that there was no fatal variance.

Almonor further argues that the district court erred in admitting emails between him and another coconspirator that predated the dates of the charged conspiracy and concerned transactions that were not part of the charged conspiracy, including one email that referenced a levy that was placed upon Almonor's assets for a significant amount of unpaid child support. We review the district court's admission of evidence for abuse of discretion. *United States v. Ebert*, 61 F.4th 394, 403 (4th Cir. 2023). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

Rule 404(b) of the Federal Rules of Evidence prohibits the admission into evidence of any other "crime, wrong, or other act . . . to prove a person's character in order to show

8

that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But the Rule allows the admission of evidence of other acts or crimes if used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To be admissible under Rule 404(b), the evidence must be: (1) relevant to an issue other than the defendant's character; (2) necessary to prove an element of the charged offense; (3) reliable; and (4) admissible under Fed. R. Evid. 403, in that the probative value of the evidence must not be substantially outweighed by its prejudicial nature. *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997).

"Critically, however, not all prior bad act evidence is encompassed by Rule 404(b). *United States v. Brizuela*, 962 F.3d 784, 793 (4th Cir. 2020) (citation modified). "Instead, the rule is only applicable when the challenged evidence is extrinsic, that is, separate from or unrelated to the charged offense." *Id*. (citation modified). By contrast, "acts that are a part of, or intrinsic to, the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." *Id*. (citation modified). Evidence is intrinsic when it arises "out of the same series of transactions as the charged offense" or when it is "necessary to complete the story of the crime on trial." *United States v. Kennedy*, 32 F.3d at 885 (citation modified). For evidence of uncharged conduct to be admissible to "complete the story" of a charged offense, it must be "probative of an integral component of the crime on trial or provide information without which the factfinder would have an incomplete or inaccurate view of other evidence or of the story of the crime itself." *Brizuela*, 962 F.3d at 795.

9

We have reviewed the record and conclude that the district court did not abuse its discretion in admitting the emails. The court correctly determined that the evidence was intrinsic to the charged conspiracy and therefore not subject to Rule 404(b). Moreover, the court also properly determined that, even if the evidence was subject to Rule 404(b), it was admissible to demonstrate Almonor's motive, intent, knowledge, and lack of mistake, and its probative value was not substantially outweighed by its prejudicial effect.

Almonor also challenges the loss calculation and restitution amount, asserting that the loss from the transaction in North Carolina should not have been included in either figure. With respect to the loss amount, "[w]hen considering a challenge to a district court's application of the Guidelines, [we] review[] factual findings for clear error and legal conclusions de novo." *United States v. Freitekh*, 1114 F.4th 292, 317 (4th Cir. 2024) (citation modified). The "Guidelines provide for offense level adjustments that increase with the amount of loss." *United States v. Lawson*, 128 F.4th 243, 255 (4th Cir. 2025). "Loss is defined as the greater of actual loss or intended loss." *Id.* (citation modified); *see* U.S. Sentencing Guidelines Manual § 2B1.1(b)(1), cmt. n.3(A) (2023). "In the case of a conspiracy, loss is attributable to the defendant if it results from the conduct of others so long as the conduct was in furtherance of, and reasonably foreseeable in connection with the criminal activity." *United States v. Shephard*, 892 F.3d 666, 673 (4th Cir. 2018) (citation modified). "The government must establish the amount of loss by a preponderance of the evidence. But the court need only make a reasonable estimate of the loss." *Lawson*, 128 F.4th at 255 (citation modified).

10

We conclude that the district court properly calculated the loss amount. The Government demonstrated that Almonor was a member of the conspiracy in which a coconspirator defrauded the North Carolina business. Moreover, given that Almonor recruited other members of the conspiracy, it was reasonably foreseeable to him that there were other coconspirators laundering money from the business email scheme. The loss from the transaction involving the North Carolina business was therefore properly attributable to Almonor.

With respect to the restitution amount, we review "a district court's restitution order for abuse of discretion." *United States v. Stone*, 866 F.3d 219, 224 (4th Cir. 2017). District courts must calculate restitution based on "the unique circumstances of each case." *United States v. Ritchie*, 858 F.3d 201, 214 (4th Cir. 2017). The Mandatory Victims Restitution Act ("MVRA") 18 U.S.C. § 3663A(a), directs district courts, in cases involving certain crimes "involving, inter alia, fraud or deceit, to order 'that the defendant make restitution to the victim of the offense.'" *United States v. Llamas*, 599 F.3d 381, 390 (4th Cir. 2010) (quoting 18 U.S.C. § 3663A(a)(1)). For conspiracy convictions, "a restitution award under the MVRA is limited to the losses attributable to the specific conspiracy offenses for which the defendant was convicted." *Id*. at 391. Having concluded that the amount from the fraudulent North Carolina transaction was attributable to the conspiracy in which Almonor participated, we further conclude that the district court properly included the loss from that transaction in the restitution amount.

Almonor next argues that the district court erred in applying a four-level enhancement under the Guidelines for being in the business of money laundering. Under

11

the Guidelines, a court should apply a four-level enhancement if the defendant was in the business of laundering funds. USSG § 2S1.1(b)(2)(C). The commentary to the Guidelines instructs that courts shall consider the totality of the circumstances in determining whether to apply this enhancement. USSG § 2S1.1(b)(2)(C), cmt. n.4(A). Courts are instructed to consider six factors, including: whether the defendant regularly engaged in laundering funds; the period of time the defendant regularly laundered funds; whether the defendant laundered funds from multiple sources; whether the defendant gained a substantial amount of revenue from the laundering; whether the defendant had a prior conviction for similar conduct; and whether the defendant made statements to an undercover officer demonstrating any of the above factors. USSG § 2S1.1(b)(2)(C), cmt. n. 4(B).

We conclude that the district court properly applied the enhancement. The evidence showed that Almonor was involved in laundering funds for the scheme for at least four years, and he engaged in several transactions over that period. *See United States v. Mitchell*, 613 F.3d 862, 869 (8th Cir. 2010) (characterizing defendant's involvement in money laundering for 16 to 18 months as "extended"). Moreover, Almonor gained a substantial amount of revenue from the conspiracy. *See id.* (noting that a gain of $42,000 would be enough to qualify as substantial). On balance, the factors weighed in favor of application of the enhancement.

Finally, Almonor challenges two standard conditions of supervised release as impermissible delegations of authority to the probation officer. One of these conditions requires Almonor to participate in a substance abuse testing program and the other condition requires Almonor to participate in transitional support services, including

12

cognitive behavioral treatment programs, and to follow the rules and regulations of those programs. Both conditions provide that the probation officer supervise Almonor's participation in the programs, including the provider, locality, modality, duration, and intensity.

As Almonor did not challenge these conditions at the sentencing hearing, we review this issue for plain error. To succeed on plain error review, Almonor must "establish that (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights." *United States v. Combs*, 36 F.4th 502, 505 (4th Cir. 2022) (citation modified). If Almonor makes this showing, we have discretion to correct the error and will do so "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 585 U.S. 129. 135 (2018) (citation modified). "District courts have substantial discretion in setting the terms and conditions of supervised release after a term of imprisonment within parameters set by both federal statutes and the Sentencing Guidelines." *United States v. Williams*, 130 F.4th 177, 186 (4th Cir. 2025) (citation modified), *cert. denied*, 2025 WL 2823839 (U.S. Oct. 6, 2025). While district courts and probation officers work together to manage supervised release, "the district court violates Article III of the Constitution if it delegates to probation officers a core judicial function." *Id.* (citation modified). However, "when [a district court] orders the broad principles that guide the conditions of release and permits the probation officer to fill in many details necessary for applying the condition," the court "retains the ultimate authority for the condition" and has not violated the Constitution. *Id.* (citation modified).

13

We have recently rejected a nondelegation challenge to a condition of supervision that was substantially similar to those Almonor challenges. *Id.* In *Williams*, the challenged condition required the defendant to participate in a mental health treatment program and provided that the probation officer would supervise the defendant's participation in the program, including provider, location, modality, duration, and intensity. *Id.* at 187. We held that the district court did not delegate core judicial functions to the probation officer, but merely permitted the probation officer to fill in certain details. *Id.* Based on our ruling in *Williams*, therefore, we reject Almonor's challenge to the standard conditions of supervised release.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

14